# Illinois Official Reports

## Appellate Court

---

### *In re Estate of Lee*, 2017 IL App (3d) 150651

---

| | |
|---|---|
| Appellate Court Caption | *In re* ESTATE OF SANDRA K. LEE, Deceased (Camden Lee, Jordan Lee, and Zoe Lee, Petitioners-Appellees, v. Kathleen Line, Trustee of the Sandra K. Lee Trust, and Jennifer Mansberger, Executor of the Estate of Sandra K. Lee, Respondents) (Kathleen Line, Respondent-Appellant). |
| District & No. | Third District<br>Docket No. 3-15-0651 |
| Filed | August 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Kankakee County, No. 05-P-51; the Hon. Michael J. Kick, Judge, presiding. |
| Judgment | Affirmed in part, reversed in part, and vacated in part; cause remanded. |
| Counsel on Appeal | John P. Ridge, of Kankakee, for appellant.<br><br>Christopher W. Bohlen, of Barmann, Bohlen & Jacobi, P.C., of Kankakee, for appellees. |
| Panel | JUSTICE CARTER delivered the judgment of the court, with opinion.<br>Justices Lytton and O'Brien concurred in the judgment and opinion. |

¶ 1    In a probate proceeding, the beneficiaries of a testamentary trust sought to have the trustee, Kathleen Line, provide an accounting of the trust; to have the executor of the decedent's estate, Jennifer Mansberger, pay certain sums directly to the beneficiaries, rather than to the trust; to hold Kathleen in contempt for failing to provide an accounting; and to remove Kathleen as the trustee of the trust. After hearings, the Kankakee County circuit court granted all of the beneficiaries' requests. Kathleen appeals and challenges those rulings. We affirm all of the orders in question, except for the contempt order, as to which we reverse, vacate the sanction imposed, and remand for further proceedings.

¶ 2                                                          FACTS

¶ 3    The decedent, Sandra K. Lee, died in January 2005. She was survived by her three minor children, Camden Lee (born in 1988), Jordan Lee (born in 1989), and Zoe Lee (born in 1995). Sandra had a will, which was executed in December 2004. Of relevance to this appeal, the will (1) named Jennifer as the executor of Sandra's estate, (2) established a testamentary trust for the benefit of Sandra's three children, (3) bequeathed the residuary estate to the trust, and (4) named Kathleen as the trustee of the trust and the guardian of the children. More specifically, the language in the will pertaining to the trust (referred to hereinafter as the trust), provided that Kathleen was to apply the income and such amounts of the principal as she, "in [her] sole discretion," determined was "necessary for the support, health, welfare, and education" of the children. The trust stated further that it was Sandra's "primary purpose to provide for [the] support, health, welfare, and education of [her] children irrespective of the effect that such may have upon the interest of any remainderman under [the] trust." The trust also provided that as each child reached the age of 25, he or she was to receive one-third of the trust assets.

¶ 4    In February 2005, Jennifer filed a petition to admit the will to probate and to appoint herself as the executor of Sandra's estate. Along with the petition, Jennifer also filed an inventory, showing that the value of Sandra's personal estate was approximately $233,000. Later that same month, the trial court granted Jennifer's petition, admitted Sandra's will to probate, and appointed Jennifer as the executor of Sandra's estate.

¶ 5    Shortly after Sandra passed away, the children, except for Camden, moved in with Kathleen and lived with Kathleen and her family for the next several years. Camden was in the Department of Corrections at the time of Sandra's death and, upon being released, moved in with Kathleen and her family as well.

¶ 6    In April 2010, five years after the children had moved in with Kathleen and her family, Kathleen filed a petition in the trial court demanding that Jennifer provide an accounting of the estate and that Jennifer release estate assets to Kathleen as the trustee of the trust. The following month, Jennifer filed an accounting of the estate. The accounting indicated that the estate started with a balance of approximately $269,000 in cash or other assets and that certain itemized disbursements were made over a five-year period for the benefit of the children. Most notably, $90,000 was distributed to Kathleen as the trustee of the trust in April 2009, and $100,000 was distributed to Kathleen as the trustee of the trust in December 2009. Jennifer's accounting indicated further that as of the last time a yearly statement was received, the estate had about $4000 in a checking account and about $43,000 in a stock account. After some

additional court dates and the tender of some discovery from Jennifer to Kathleen, the case was continued generally, to be brought before the trial court if necessary.

¶ 7 In August 2014, Jordan filed a petition in the trial court for an accounting of the estate by Jennifer (as the executor) and of the trust by Kathleen (as the trustee).[1] Neither Jennifer nor Kathleen objected to the petition. By agreement of the parties, therefore, the trial court ordered Jennifer to prepare an accounting of the estate and Kathleen to prepare an accounting of the trust. Jennifer filed her accounting in October 2014. Jennifer's accounting indicated that the estate had assets of approximately $81,000 ($4000 in a checking account and $77,000 in a stock account). Kathleen, however, after requesting and receiving a continuance, failed to file an accounting of the trust.

¶ 8 In January 2015, the trial court issued a rule to show cause against Kathleen for failing to file the accounting in a timely manner. The petition for rule, which had previously been filed, did not specify what type of contempt finding was being sought against Kathleen, asked to have Kathleen "punished accordingly" for her contempt of court, and requested an award of reasonable attorney fees for the "enforcement of the court's orders and the filing of the necessary petitions to obtain the accounting." Later that same month, Jordan, Camden, and Zoe (collectively referred to as the children) filed a request with the trial court asking the court to order that the remaining funds held by Jennifer, as the executor of the estate, be released directly to them, rather than to the trust.

¶ 9 In February 2015, a hearing was held on the rule to show case. After calling the motion for hearing, the trial court immediately asked Kathleen's attorney if he was going to present any evidence as to why Kathleen should not be held in contempt of court. The trial court spoke of Kathleen purging herself of any possible contempt. Ultimately, Kathleen's attorney did not present any evidence, nor did the children's attorney. At the conclusion of the hearing, the trial court found Kathleen in contempt of court for failing to file the accounting in a timely manner.

¶ 10 In April 2015, Kathleen filed her original accounting, which was subsequently amended. Relying primarily upon a study done by the United States Department of Agriculture (USDA) rather than actual expenses, the amended accounting provided estimated amounts that had been spent on behalf of the children over the past several years, although some specific expenses were listed. The amended accounting indicated that Camden had lived with Kathleen and her family for 3.5 years, that Jordan had lived with Kathleen and her family for 8.51 years, and that Zoe had lived with Kathleen and her family for 9.5 years. In addition, Camden's girlfriend and son had also lived with Kathleen and her family for 3.5 years at Camden's request. During the time period when the children had lived with Kathleen, the trust had received $190,000 from the estate and approximately $158,000 from Social Security for the children's benefit and had spent approximately $505,000 on the children. Thus, according to Kathleen, the trust had a shortage of approximately $315,000, which presumably had been paid for by Kathleen and her family. Among the expenses listed in the amended accounting were the interest paid on a new house that Kathleen's family had built in December 2005 and a new car that Kathleen's family had acquired. No receipts, copies of checks, or anything of that nature were attached to the accounting, other than a copy of the USDA study.

---

[1]Although not quite clear from the record, it appears that the other two children, Camden and Zoe, later joined in that petition and were parties to the other pleadings filed in this case. All three of the children were represented by the same attorney.

¶ 11 Later that same month, the children filed a petition in the trial court for the removal of Kathleen as the trustee of the trust. Kathleen objected to the petition and argued that she was entitled to reimbursement from the estate or the trust for her family's own money that was spent to support the children over the past several years.

¶ 12 In May 2015, the children filed objections to Kathleen's amended accounting and asked the court to enter a judgment against Kathleen for $190,000, the amount that Kathleen, as trustee, had received from the estate, plus interest. Kathleen filed a motion to dismiss the objections and the request for judgment. In the motion to dismiss, Kathleen asserted for the first time that she had no duty under the law or under the terms of the trust to provide an accounting.

¶ 13 A hearing was held later that month on the contempt sanction to be imposed upon Kathleen and on the children's motion to distribute the remaining estate assets directly to them, rather than to the trust. During arguments on those matters, when Kathleen's attorney asserted that Kathleen had no statutory duty to file an accounting, the trial court responded that Kathleen's attorney was raising something that was "over" and that it had already ordered Kathleen to provide the accounting, which she had failed to do. After the arguments of the attorneys had concluded, the trial court ordered Kathleen to pay the children's reasonable attorney fees related to the filing and prosecution of the rule to show cause as the sanction to be imposed upon the finding of contempt. As for the motion to distribute, the trial court granted the children's motion and ordered Jennifer, as the executor of the estate, to distribute $20,000 of the estate's residuary assets to Camden and $20,000 to Jordan—both of whom had reached the age of 25—as an advance on their one-third share of the remaining trust property. The trial court ordered further that Jennifer was to retain the balance of the estate's assets in her capacity as the executor. Kathleen filed a motion to reconsider.

¶ 14 On two court dates in June and July 2015, an evidentiary hearing was held on the children's petition to remove Kathleen as the trustee of the trust. At the hearing, testimony was provided by Kathleen, Jordan, Zoe, and Kathleen's husband, Scott. In her testimony, Kathleen acknowledged that she did not keep records for most of the money that she had spent on the children, although she did have some records, which were not attached to the accounting. The money that Kathleen received from the estate and from Social Security for the benefit of the children initially went into what was presumably a trust account and was then transferred into Kathleen's own account. According to both Kathleen and Scott, they built a new house because their current house did not have enough bedrooms for Sandra's children, and they bought a new car because they could not fit the three additional children (Sandra's children) into the pickup truck that they owned. Kathleen stated further that her family had sold many of their own personal belongings to raise money to support the children, especially during the first five years, because Jennifer had not turned over any money from the estate to the trust and had not even told Kathleen that there was money that could be turned over to the trust to be used for the children's benefit. Kathleen denied that she had kept any of the children's funds for herself and stated that all of the funds were used for the benefit of the children. At the conclusion of the hearing, the trial court took the petition for removal under advisement to give the parties time to file written arguments.

¶ 15 Also in July 2015, the trial court held a hearing on Kathleen's motion to reconsider. At the conclusion of the hearing, after listening to the arguments of the attorneys, the trial court took the motion under advisement.

¶ 16    In September 2015, an order was entered as to the contempt sanction. The amount of the children's attorney fees was set forth in an affidavit by the children's attorney. Attached to the affidavit was the attorney's detailed billing statement for services rendered from April 2014 through May 2015, which included such things as preparing the petition for accounting, preparing the petition for rule to show cause, preparing the petition for removal of trustee, preparing the motion for distribution of funds from the estate to the beneficiaries, attending the court hearings related to the petition for accounting, and attending the court hearings related to the petition for rule to show cause. The total amount of fees shown on the attorney's detailed billing statement was $3180. Kathleen was ordered to pay the full amount.

¶ 17    An order was also entered that same month denying Kathleen's motion to reconsider. After the motion to reconsider was denied and the contempt sanction had been determined, Kathleen filed her initial notice of appeal in this case. In the initial notice of appeal, Kathleen challenged the order directing Jennifer to distribute the estate assets directly to the beneficiaries (distribution order), rather than to the trust, and the order finding Kathleen in contempt of court for failing to file the accounting (contempt order).

¶ 18    In December 2015, at a status hearing, the trial court rendered its decision on the petition for removal. After considering the evidence presented, the written arguments of the attorneys, and the applicable law, the trial court found that the evidence was "overwhelming and basically uncontroverted that the Trustee [Kathleen] violated her fiduciary duty by essentially treating the trust money as if it were her own." The trial court, therefore, granted the petition to remove Kathleen as the trustee of the trust. The trial court's written order, which was entered the following month, stated that:

> "the unrebutted evidence established that the Trustee, Kathleen Line, failed to maintain sufficient records of the trust income and expenditures and commingled the funds of the trust with her personal funds and used the trust assets as if they were her own property."

After the written order was entered, Kathleen filed an amended notice of appeal. In the amended notice, Kathleen appealed the distribution order, the contempt order, and the removal order.

¶ 19                                              ANALYSIS
¶ 20                            I. Whether This Court Has Jurisdiction
                              to Rule Upon the Issues Raised in This Appeal
¶ 21    Before we address the issues raised in this appeal, we must first determine whether this court has jurisdiction to rule upon those issues. Although neither party has raised a question as to appellate court jurisdiction in this case, we have an obligation before going forward to determine whether jurisdiction to hear this appeal exists and to dismiss this appeal if jurisdiction is lacking. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 539 (1984). In general, when multiple parties or multiple claims are involved in a case, a final order or judgment that does not resolve all of the claims between all of the parties (that does not dispose of the entire case) is not an appealable order and does not become appealable until all of the claims have been resolved, unless the trial court makes an express written finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Feb. 26, 2010) that there is no just reason to delay either enforcement or appeal of the judgment. *In re Marriage of Gutman*, 232 Ill. 2d 145, 151

(2008). However, under certain circumstances specified in Illinois Supreme Court Rule 304(b) (eff. Feb. 26, 2010), an appeal may be taken in a multiple-party/multiple-claim case before the entire case is completely resolved without a Rule 304(a) finding. Specific to this case, Rule 304(b)(1) provides that "[a] judgment or order entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party" is appealable without the requirement that a Rule 304(a) finding be made by the trial court. Ill. S. Ct. R. 304(a), (b)(1) (eff. Feb. 26, 2010).

¶ 22    In explanation of that provision, the committee comments to the rule provide that:

> "Paragraph (b), added in 1969, lists several kinds of judgments and orders that have been appealable without a finding that there is no just reason for delaying enforcement or appeal even though they may not dispose of the entire proceeding in which they have been entered or to which they may be related. This paragraph is intended to be declaratory of existing law and, in certain instances, to remove any doubt or room for argument as to whether the finding provided for in paragraph (a) may be necessary. It is not the intention of the committee to eliminate or restrict appeals from judgments or orders heretofore appealable.
>
> Subparagraph (1) applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R. 304, Committee Comments (rev. Sept. 1988).

¶ 23    Although the examples listed in the committee comments would seem to indicate that the application of Rule 304(b)(1) is fairly limited, the rule has been interpreted to allow for appellate review in several different types of situations. See 18 Robert S. Hunter, Illinois Practice, Estate Planning and Administration § 154:4 (4th ed. 2007). The courts have done so in an effort to promote efficiency and the sound and practical administration of estates, guardianships, trusts, and other similar types of proceedings because the courts have recognized that some issues in those types of lengthy proceedings must be resolved with certainty to avoid having to repeat the entire proceeding over again. See *In re Trusts of Strange*, 324 Ill. App. 3d 37, 41-42 (2001) (citing *In re Estate of Kime*, 95 Ill. App. 3d 262, 268 (1981)). Thus, with those types of issues, the courts have allowed or required that an immediate (within 30 days of the entry of the judgment) appeal be filed. *Id.*

¶ 24    We believe that the issues raised in the present case as to the estate and trust are the types of issues to which an immediate appeal under Rule 304(b)(1) would apply. Thus, for the purposes of judicial efficiency and to facilitate the sound and practical administration of the estate and trust in the present case, we find that the orders appealed in this case as to the estate and trust were final and appealable orders under Rule 304(b)(1) and that we have appellate jurisdiction to consider the merits of the issues raised as to those orders. See Ill. S. Ct. R. 304(b)(1) (eff. Feb. 26, 2010); Hunter, *supra* § 154:4; *Strange*, 324 Ill. App. 3d at 41-42; *In re Estate of Thorp*, 282 Ill. App. 3d 612, 617 (1996) (stating that the interpretation of a will is one of the specific issues in the administration of an estate that requires certainty and for which an immediate appeal must be brought under Rule 304(b)(1)); *In re Estate of Neisewander*, 130 Ill. App. 3d 1031, 1033 (1985) (finding that an order approving an interim accounting of an estate was a final and appealable order under Rule 304(b)(1)); *Barnhart v. Barnhart*, 415 Ill. 303, 309 (1953) (finding that the trial court's order, which determined the rights of the opposing

- 6 -

claimants to certain trust property, was a final and appealable order); *In re Estate of Russell*, 372 Ill. App. 3d 591, 593 (2007) (applying Rule 304(b)(1) in a proceeding relating to the administration of a trust). In addition, as to the contempt order, because a penalty was imposed, that order was a final and appealable order as well. *In re Marriage of Newton*, 2011 IL App (1st) 090683, ¶¶ 7-8 (stating that a contempt judgment that imposes a penalty is a final and appealable order). Having found that appellate jurisdiction exists as to each of the issues raised in this appeal, we will now address the merits of those issues.

¶ 25                              II. Whether the Trial Court Erred in Ordering
                                  Kathleen to Provide an Accounting of the Trust

¶ 26       As her first point of contention on appeal, Kathleen argues that the trial court erred in ordering her to provide an accounting of the trust to the children (the beneficiaries of the trust). Kathleen asserts that the trial court's ruling was erroneous because she had no duty under the applicable statutes or under the trust itself to provide an accounting to the children. As the children correctly point out, however, Kathleen has forfeited that argument on appeal because she failed to initially object to the children's request for an accounting in the trial court and allowed the order requiring an accounting to be entered by agreement. Indeed, in the present case, Kathleen did not even make her assertion—that she had no duty to provide an accounting—until well after the accounting had been ordered and Kathleen had been found in contempt for failing to provide it. Under the circumstances of the present case, Kathleen cannot now assert on appeal that the trial court's order requiring an accounting was entered in error. See *In re Detention of Traynoff*, 358 Ill. App. 3d 430, 441 (2005) (stating that in civil cases, as a general rule, a party forfeits an objection if the party fails to raise that objection in a specific and timely manner); *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (finding that a party forfeits her right to complain about an error when to do so would be inconsistent with the position taken by the party in an earlier court proceeding or when the party consented to or induced the court to make that error).

¶ 27       Furthermore, even if we had concluded that Kathleen's argument had not been forfeited, we would have still ruled in the children's favor on this issue. Under the Trusts and Trustees Act (Act), a trustee is required to provide a yearly accounting to any person who is entitled to receive the trust income or who is receiving the trust income, or if none, to any person who is eligible to have the benefit of the trust income. 760 ILCS 5/11(a) (West 2014). The trust language in this case is clear and unambiguous that the income and the principal of the trust were to be used for the benefit of the children. The children, therefore, as the parties who were eligible to receive the benefit of the trust income, were entitled under the statute to a yearly accounting of the trust from Kathleen. See *id.*; *Wallace v. Malooly*, 4 Ill. 2d 86, 94-95 (1954) (recognizing the legal principles, as stated in the Restatement of Trusts § 173, at 314-15 (1935), that (1) a beneficiary has the right to an inspection upon demand so that the beneficiary can verify that the trust is being properly executed, as long as the beneficiary's purpose in doing so is proper, and (2) a beneficiary is always entitled to such information as is reasonably necessary to enable the beneficiary to enforce his rights under the trust or to prevent or redress a breach of trust); *Goodpasteur v. Fried*, 183 Ill. App. 3d 491, 493-95 (1989) (finding that the plaintiff, a named beneficiary of a testamentary trust in which the income and principal were to be held for the benefit of the plaintiff and three other beneficiaries during their lifetimes to help them pay for their living expenses if they were unable to do so, was eligible to have the benefit

of the income from the trust and was, therefore, entitled to an accounting under section 11 of the Act).

¶ 28                    III. Whether the Trial Court Erred in Ordering
                      Jennifer to Distribute $40,000 From the Estate to the
                  Children Directly, Rather Than to Kathleen as the Trustee of the Trust

¶ 29      As her second point of contention on appeal, Kathleen argues that the trial court erred in ordering Jennifer to distribute $40,000 from the estate to two of the children directly ($20,000 each), rather than to Kathleen as the trustee of the trust. Kathleen asserts that by doing so, the trial court substantially changed the terms of Sandra's will. Kathleen asserts further that she was entitled to those funds as reimbursement for her own family's money that was spent to support the children during the first five years that they lived with Kathleen when Jennifer failed to turn over any funds from the estate to the trust. In making those assertions, Kathleen reiterates that she had no duty under the statutes or the trust document itself to provide an accounting of the trust. For all of the reasons stated, Kathleen asks that we reverse the trial court's ruling and order that the $40,000 be distributed to the trustee (presumably Kathleen) and not directly to the children.

¶ 30      The children argue that the trial court's ruling was proper and should be upheld. The children assert that the trial court's ruling did not modify the terms of the will, as Kathleen suggests, but, rather, carried out the purpose of the trust—to provide for the children. The children assert further that Kathleen's argument should be rejected because (1) Kathleen is no longer the trustee of the trust and does not, therefore, have any right to any of the funds from the trust, (2) there are no provisions in the trust that give Kathleen the right to use the trust funds for her own personal use, (3) Kathleen has not filed a legal claim against the trust or the estate for reimbursement for her own money that she allegedly spent on the children and has not obtained a judgment to that effect, (4) Kathleen's claim that she is entitled to reimbursement is not supported by a valid accounting, and (5) the trial court's ruling was the only way to ensure compliance with the intent of the trust and its directions as to distribution. For all of the reasons set forth, the children ask that we affirm the trial court's ruling ordering Jennifer to pay $40,000 from the estate directly to two of the children.

¶ 31      The arguments raised under this issue potentially involve two different standards of review. To the extent that we are called upon to review the trial court's interpretation of the terms of the trust, we will apply a *de novo* standard of review. See *Altenheim German Home v. Bank of America, N.A.*, 376 Ill. App. 3d 26, 32 (2007). However, to the extent that we are called upon to review the trial court's determination of the appropriate remedy to impose in this particular situation, we will apply an abuse of discretion standard of review. See *Tully v. Edgar*, 286 Ill. App. 3d 838, 847 (1997) (recognizing that the trial court has broad discretion in fashioning an appropriate remedy to grant the relief that equity requires to correct a wrong); *Chicago Bar Ass'n v. White*, 386 Ill. App. 3d 955, 958 (2008) (stating that whether the trial court chose the best remedy from those remedies available is reviewed on appeal for an abuse of discretion). The threshold for finding an abuse of discretion is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009); *In re Leona W.*, 228 Ill. 2d 439, 460 (2008).

¶ 32    In addressing this particular issue, as our statement of the applicable standards of review indicates, we must be mindful of the legal principles that apply to the interpretation of a trust and to the trial court's authority and ability to fashion an appropriate remedy. First, as to the interpretation of a trust, we note that the same rules are applied that are used for the interpretation of a will. *Spencer v. Di Cola*, 2014 IL App (1st) 121585, ¶ 20. The primary goal in interpreting a trust is to determine and give effect to the settlor's intent, which a court will generally enforce unless contrary to law or public policy. *Id.* The best indicator of the settlor's intent is the plain language of the trust document itself, considered as a whole. See *id.* When the trust language is clear and unambiguous, the intent of the settlor must be determined from that language, without resorting to extrinsic evidence to aid in interpretation. *Altenheim German Home*, 376 Ill. App. 3d at 32. In such a situation, a court should not allow extrinsic evidence to be used to override the intent of the settlor so as to, in effect, allow a stranger to the original proceeding make a trust for the settlor. See *Handelsman v. Handelsman*, 366 Ill. App. 3d 1122, 1133 (2006). In addition, if possible, a court should construe a trust so that no language is treated as surplusage, made insignificant, or rendered nonsensical. *Spencer*, 2014 IL App (1st) 121585, ¶ 20.

¶ 33    Second, as to the trial court's authority or ability to determine an appropriate remedy, we note that the court has broad discretion to do so in its effort to correct the particular wrong that is before it. See *Westcon/Dillingham Microtunneling v. Walsh Construction Co. of Illinois*, 319 Ill. App. 3d 870, 878 (2001). In determining an appropriate remedy, the trial court must consider what is fair, what is workable, and any prejudice that may result. *Id.* The court may also consider, in deciding upon an appropriate remedy, the relative benefits to, and hardships of, the parties involved. *Id.*

¶ 34    After considering the above legal principles as they pertain to the present case, we find that the trial court did not err in ordering Jennifer, as the executor, to turn over $40,000 of the residuary assets of the estate to Camden and Jordan ($20,000 each), rather than to the trust. In this particular case, the language of the will and of the trust was clear and unambiguous. The will provided that all of the residuary estate was supposed to be transferred to the trust to be used for the benefit of the children, and the trust provided that upon reaching the age of 25, each child was to receive a one-third share of the remaining trust assets. The only question before the trial court was how best to effectuate that intent going forward. At that particular time, the trial court was faced with a situation where the residuary estate had not been immediately turned over to the trust, the estate still had some residuary assets in its possession, the trustee of the trust had commingled the trust assets with her own and had not kept records of many of the expenses that were incurred on behalf of the children, and two of the children had turned 25. The trial court, therefore, had to fashion an appropriate remedy to address that situation, while still trying to give effect to Sandra's intent as set forth in the will and the trust. The remedy selected by the trial court in this particular case did just that—it disbursed an approximate one-third share of the remaining residuary assets to the two children who had turned 25, as called for by the trust, and did so in a manner that was mindful of the ongoing concerns with Kathleen acting as trustee. Under the unique circumstances of this particular case, therefore, we find that the trial court's order did not alter the intent of Sandra's will or trust (see *Spencer*, 2014 IL App (1st) 121585, ¶ 20) and did not constitute an abuse of discretion (see *Blum*, 235 Ill. 2d at 36; *Leona W.*, 228 Ill. 2d at 460).

¶ 35                    IV. Whether the Trial Court Erred in Finding
                    Kathleen in Contempt for Failing to Provide the Accounting

¶ 36    As her third point of contention on appeal, Kathleen argues that the trial court erred in finding her in contempt of court for failing to provide the accounting of the trust. Kathleen asserts that the trial court's contempt order was defective because (1) it contained no method of payment nor any date by which payment was supposed to be made, (2) it required her to pay for attorney fees that were not related to the rule to show cause, (3) it did not provide the means by which Kathleen could purge herself of contempt, and (4) the proper procedure was not followed in that no rule to show cause was prepared, signed by a judge, or served on Kathleen (asserted in the reply brief). Kathleen asks, therefore, that we reverse the trial court's contempt order.

¶ 37    The children argue that the trial court's contempt ruling was clear, direct, and proper and that it should be upheld. The children assert that the contempt order (1) did not contain a purge provision because there was nothing left to purge and (2) created no confusion as to the method or date of payment in that it was to be paid to the children through their attorney as of the date of the order. The children ask, therefore, that we affirm the trial court's contempt ruling.

¶ 38    All courts have the inherent power to punish a party for contemptuous conduct. See *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 19. That power is essential to the maintenance and administration of the court's judicial authority. *Id.* Whether a party is guilty of contempt is a question of fact for the trial court to decide. *Id.* ¶ 22. A reviewing court will not disturb a trial court's determination in that regard unless it is against the manifest weight of the evidence or the record indicates an abuse of discretion. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984).

¶ 39    A contempt proceeding may be classified as being either criminal or civil in nature and also as being either direct or indirect. See *In re Marriage of Betts*, 200 Ill. App. 3d 26, 43 (1990). The determination as to whether a contempt proceeding is criminal or civil in nature is made based upon the main purpose of the contempt sanction imposed. *Id.* If the main purpose of the sanction imposed is to coerce future conduct, the contempt is civil in nature, whereas if the main purpose of the sanction is to punish the prior conduct of the offending party, the contempt is criminal in nature. *Id.* at 43-44. The determination as to whether the contempt is direct or indirect, however, is made based upon where the contemptuous conduct occurred. See *id.* at 47-48. If the contemptuous conduct occurred in the presence (or constructive presence) of the court, the contempt is classified as direct contempt, while contemptuous conduct that did not occur in the presence of the court is classified as indirect contempt. *Id.* at 48.

¶ 40    The appropriate procedures to be used in a contempt proceeding vary depending upon the type of contempt involved. *Id.* at 43. Direct contempt, regardless of whether it is criminal or civil in nature, may generally be dealt with in a summary fashion—without the formality of pleadings, notice, or hearing—because the offending conduct was witnessed by the court itself.[2] *Id.* at 49. On the other hand, a person charged with indirect criminal contempt is generally entitled to all of the constitutional protections and procedural rights afforded to other criminal defendants, including the right to an attorney, the right to a public hearing, the right to present evidence, the right to confront and cross-examine witnesses, the right to be presumed

_____

[2]A different rule may apply where the contemptuous conduct occurred in the constructive presence of the court. See *Betts*, 200 Ill. App. 3d at 49.

innocent, the right not to incriminate himself, and the right to be proven guilty beyond a reasonable doubt, along with certain other rights. *Id.* at 58. Whereas, a person charged with indirect civil contempt is only entitled to minimal due process, including the right to notice and an opportunity to be heard. *Id.* at 52-53. In addition, as Kathleen correctly notes, a civil contempt order must be in writing and must specify what the offending party is required to do to purge herself of the contempt. *Pancotto v. Mayes*, 304 Ill. App. 3d 108, 112 (1999).

¶ 41 Having reviewed the contempt proceedings in the present case, we find that the procedure followed in the trial court did not comply with the procedures required under the law. The instant case involved indirect contempt because the alleged contemptuous conduct—the failure to file an accounting as ordered by the court—did not take place in the court's presence. See *Betts*, 200 Ill. App. 3d at 48. It cannot be clearly determined from the proceedings, however, whether the contempt was criminal or civil in nature. Some of the facts in this case indicate that the contempt was civil in nature, such as the fact that (1) the contempt proceeding was initiated by the filing of a petition for rule to show cause (see *id.* at 58 (stating that a petition for rule to show cause should not be used for an indirect criminal contempt proceeding because the offending party in a criminal contempt proceeding cannot be required to testify)), (2) the trial court referred at times to Kathleen's ability to purge herself of any possible contempt (see *id.* at 43 (stating that the purpose of civil contempt is to coerce compliance)), and (3) during the contempt hearing, the children's attorney, as the person prosecuting the contempt, did not present any evidence and the trial court called upon Kathleen's attorney to present evidence as to why Kathleen should not be held in contempt for failing to file the accounting (see *id.* at 58 (in a criminal contempt proceeding, the offending party cannot be required to testify)). Other facts, however, indicate that the contempt in the present case was criminal in nature. Those facts include (1) the petition for rule specifically sought to "punish" Kathleen for failing to file the accounting as ordered by the court (see *id.* at 43-44 (stating that the purpose of criminal contempt is to punish the offending party for contumacious behavior)) and (2) the contempt sentencing order did not contain a purge provision (see *Pancotto*, 304 Ill. App. 3d at 112). Adding to the confusion and uncertainty in this case was the fact that the petition for rule and the trial court's orders regarding the contempt did not specify whether the contempt involved was civil or criminal in nature.

¶ 42 In short, it appears from the record that neither the trial court nor the parties were certain as to what type of contempt proceeding was involved in this case. The court and the parties, therefore, could not follow the appropriate procedures required under the law for that type of contempt proceeding. Based upon all of the facts of record, we must conclude that the contempt proceeding in this case was flawed and that the finding of contempt against Kathleen must be reversed. The reversal, however, is without prejudice, and the attorney for the children may go forward with a new contempt proceeding based upon Kathleen's failure to file the accounting. Any costs and attorney fees awarded, however, must be strictly limited to those incurred as a result of the filing and prosecution of the contempt petition. The record before us indicates that the attorney fees awarded previously were not appropriately limited in that way.

¶ 43 V. Whether the Trial Court Erred
in Removing Kathleen as the Trustee of the Trust

¶ 44 As a final issue, we note that the amended notice of appeal that Kathleen filed in the trial court indicated that in addition to the issues discussed above, Kathleen was also challenging

the trial court's order removing her as the trustee of the trust. Kathleen has made no argument, however, as to that issue in either her initial brief on appeal or in her reply brief. That issue, therefore, is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013) (stating that points not argued in an appellant's initial brief are forfeited and shall not be raised in the appellant's reply brief, oral argument, or in a petition for rehearing); *People v. Hood*, 210 Ill. App. 3d 743, 746 (1991) (recognizing the well-established rule that mere contentions, without argument or citation of authority, do not merit consideration on appeal). Accordingly, we affirm the trial court's order removing Kathleen as the trustee of the trust.

¶ 45                                    CONCLUSION

¶ 46        For the foregoing reasons, we affirm the orders of the circuit court of Kankakee County requiring Kathleen to file an accounting of the trust; directing Jennifer, as the executor of the estate, to transfer $40,000 from the estate directly to two of the beneficiaries, rather than to the trust; and removing Kathleen as the trustee of the trust. In addition, we reverse the circuit court's contempt order, vacate the contempt sanction imposed, and remand for further proceedings.

¶ 47        Affirmed in part, reversed in part, and vacated in part; cause remanded.