# Illinois Official Reports

## Appellate Court

---

**Mehalko v. Doe, 2018 IL App (2d) 170788**

---

| | |
|---|---|
| Appellate Court Caption | KATHY MEHALKO, Plaintiff-Appellant, v. JANE DOE, KATHY MILLER WHITNEY, a/k/a Opposing Voices of Kathy Mehalko Puppymill Agenda, and MATTHEW CALEB WILLIAMS, a/k/a Caleb Matthew Williams, a/k/a Caleb-Matthew Williams, a/k/a Pet Owners Beware, Defendants (Jane Doe, Defendant-Appellee). |
| District & No. | Second District<br>Docket No. 2-17-0788 |
| Filed | July 10, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, No. 16-L-214; the Hon. Eugene G. Doherty, Judge, presiding. |
| Judgment | Affirmed.<br>Cause remanded. |
| Counsel on Appeal | Jeffrey P. Orduno, of Rockford, for appellant.<br><br>Joel M. Huotari, of WilliamsMcCarthy, LLP, of Rockford, for appellee. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion.<br>Presiding Justice Hudson and Justice Schostok concurred in the judgment and opinion. |

**OPINION**

¶ 1      Plaintiff, Kathy Mehalko, appeals from the trial court's order imposing postjudgment sanctions on her under Illinois Supreme Court Rule 219 (eff. July 1, 2002). Mehalko argues that Rule 219 sanctions were improper because (1) the trial court lacked jurisdiction to impose such sanctions as the case was already closed, (2) the sanctions' purpose was not to further discovery as required by the rule, and (3) no "abuse of discovery procedures" occurred. She further argues that the hearings did not include the procedural safeguards necessary for contempt proceedings.

¶ 2      We conclude that the trial court had jurisdiction to sanction Mehalko under both Rule 219 and its inherent authority to enforce its orders through contempt proceedings. However, although the trial court found Mehalko in indirect civil contempt, it failed to specify what Mehalko must do to purge herself of the contempt. We therefore remand the cause.

¶ 3      I. BACKGROUND

¶ 4      Mehalko is an animal rights activist. On July 29, 2016, she filed a three-count complaint against various defendants alleging defamation, violation of the Right of Publicity Act (765 ILCS 1075/1 *et seq.* (West 2016)), and intentional infliction of emotional distress. The claims arose from photographs and comments about her that were posted on the Facebook pages "Opposing Voices of Kathy Mehalko Puppymill Agenda" (Opposing Voices) and "Pet Owners Beware." Mehalko did not know who was responsible for creating the Facebook pages or posting the comments, so she nominally filed the case against various Jane and John Does.

¶ 5      In a related action, Mehalko obtained an order requiring Facebook to disclose to Mehalko's attorney the individual(s) behind Opposing Voices. Jane Doe was named to counsel and then served in the instant case.

¶ 6      Mehalko was granted leave to file an amended complaint on September 1, 2016. On September 21, 2016, Doe filed a motion to dismiss the complaint.

¶ 7      Mehalko thereafter sought to depose Doe. On November 8, 2016, the trial court granted Mehalko leave to conduct a limited deposition of Doe. Its order stated that Mehalko's attorney could reveal Doe's identity to Mehalko, who could attend the deposition. It further stated that Mehalko was "ordered *not* to disclose Doe's identity to anyone and may be subject to contempt of court if she [did]." (Emphasis in original.)

¶ 8      On January 19, 2017, the trial court allowed Mehalko leave to file a second amended complaint.

¶ 9      On February 22, 2017, the trial court granted Doe's motion to dismiss, and it dismissed all claims as to all parties with prejudice under section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2016)). Shortly afterward, on March 2, 2017, Mehalko filed a motion to lift the November 8, 2016, protective order prohibiting her from disclosing Doe's identity. The trial court denied Mehalko's motion on March 23, 2017.

¶ 10      More than 30 days later, on May 4, 2017, Doe filed a petition for a rule to show cause and for reconsideration. She alleged that she had proceeded under a pseudonym in the case because Mehalko's Internet followers, who did not know Doe's identity, had made veiled threats against her. Doe alleged that Mehalko had violated the protective order by revealing Doe's identity to them, resulting in escalating "online taunts and menacing behavior." Doe alleged

that Mehalko's conduct constituted contempt of court. Doe asked the court to order Mehalko to remove all Facebook posts referring to her and pay her attorney fees.

¶ 11    On June 20, 2017, the trial court granted Doe's petition for a rule to show cause. An evidentiary hearing took place on August 10, 2017. On August 14, 2017, Doe amended her petition "[p]ursuant to the direction of the" trial court to state that it was brought pursuant to Illinois Supreme Court Rule 219(c) and (d) (eff. July 1, 2002).

¶ 12    The trial court issued a written order on August 30, 2017, making the following findings. Mehalko did not know the person behind the Opposing Voices Facebook page before the entry of the November 8, 2016, protective order. That order allowed Mehalko to attend Doe's deposition and learn her identity, but it prohibited Mehalko from disclosing Doe's identity to anyone. Mehalko was present in court when the protective order was entered and knew its terms. Mehalko attended Doe's deposition on November 15, 2016, and learned her identity. On July 25, 2016, Mehalko and her Facebook friends had expressed that they were looking forward to the exposure of Doe's identity, which they thought could result in a class action lawsuit against her. Mehalko was present in court with her counsel on March 23, 2017, when she unsuccessfully moved to lift the protective order. On April 24, 2017, Mehalko alluded to Doe's identity on Mehalko's own Facebook page by describing the person behind Opposing Voice as a female resident of Belvidere who bred a certain type of dog. Within hours of that post, Mehalko used the alias "Justin Guy" to post comments on her Facebook page revealing Doe's first name, the name of her kennel, and her city of residence. Mehalko's disclosures directly led to online harassment, taunting, insults, and threats against Doe from third parties posting on Mehalko's Facebook page. On or about May 29, 2017, Mehalko created a new Facebook page that showed a photo of Doe's recently deceased mother-in-law, which Mehalko copied from her obituary. The page disclosed the name of Doe's kennel and associated Doe with bestiality.

¶ 13    The trial court quoted Rule 219(c) and (d) and stated that Mehalko knowingly and intentionally revealed Doe's identity to others in direct violation of the trial court's November 8, 2016, protective order. The trial court awarded Doe attorney fees and costs from the date the case was closed to the date of its current order, totaling $7329.02.[1] It stated that Mehalko was free to speak out about the issues addressed on the Opposing Voices Facebook page, but it enjoined Mehalko from referring to or identifying Doe in any manner.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    Mehalko's arguments on appeal involve the interpretation and application of an Illinois Supreme Court rule, which is a question of law that we review *de novo*. See *People v. Cole*, 2017 IL 120997, ¶ 20. Questions relating to a trial court's jurisdiction are similarly reviewed *de novo*. *J&J Ventures Gaming, LLC v. Wild, Inc.*, 2016 IL 119870, ¶ 25. We construe Illinois Supreme Court rules according to the same principles that govern the interpretation of statutes. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22. Our primary goal is to ascertain and give effect to the drafters' intent, which is best indicated by the language used, when given its plain and ordinary meaning. *Id.* We will interpret the rule such that no part of it is rendered meaningless or superfluous, and we will not depart from the rule's plain language

[1]This total was listed in a separate order entered the same day.

- 3 -

by reading into it exceptions, limitations, or conditions that conflict with the drafters' expressed intent. *Id.*

Rule 219 provides, in relevant part:

> "(c) Failure to Comply with Order or Rules. If a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) *or fails to comply with any order entered under these rules*, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:
>
> * * *
>
> In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties *the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty. When appropriate, the court may, by contempt proceedings, compel obedience by any party or person to any subpoena issued or order entered under these rules.* Notwithstanding the entry of a judgment or an order of dismissal, whether voluntary or involuntary, the trial court shall retain jurisdiction to enforce, on its own motion or on the motion of any party, any order imposing monetary sanctions, including such orders as may be entered on motions which were pending hereunder prior to the filing of a notice or motion seeking a judgment or order of dismissal.
>
> Where a sanction is imposed under this paragraph (c), the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order.
>
> (d) Abuse of Discovery Procedures. The court may order that information obtained through abuse of discovery procedures be suppressed. If a party wilfully obtains or attempts to obtain information by an improper discovery method, wilfully obtains or attempts to obtain information to which that party is not entitled, or otherwise abuses these discovery rules, the court may enter any order provided for in paragraph (c) of this rule." (Emphases added.) Ill. S. Ct. R. 219(c), (d) (eff. July 1, 2002).

Mehalko's brief consists of less than three full pages of argument, so our summary of her arguments is likewise brief. Mehalko first contends that the trial court lacked jurisdiction to consider Doe's petition and enter Rule 219 sanctions because the case was closed before Doe even filed the petition. Mehalko cites *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955. In that case, the plaintiff learned, after a jury verdict in his favor, that the defendant had understated the amount of its available insurance coverage in discovery. *Id.* ¶ 75. The plaintiff sought leave to take depositions to confirm the exact amount of coverage and pursue possible sanctions. *Id.* The trial court initially granted the request on the basis that it had " 'ancillary' " or " 'auxiliary' " jurisdiction over discovery sanctions under Rule 219(c), but it later ruled that it lacked jurisdiction. *Id.* ¶ 76. On appeal, the appellate court stated that Rule 219(c) extends a trial court's jurisdiction to address sanctions after a final judgment is entered only if the motion for sanctions was pending before the filing of a notice or motion seeking a judgment or order of dismissal. *Id.* ¶ 78. It stated that "the trial court would only retain residual jurisdiction if plaintiff had filed a motion for sanctions prior to the entry of judgment" and that,

- 4 -

because the plaintiff had not done so, the trial court properly found that it did not have residual jurisdiction to address the matter under Rule 219(c). *Id.*

¶ 19    Mehalko further argues that Rule 219 is inapplicable because an order entered pursuant to the rule must provide for discovery and a trial on the merits (see *Gallo v. Henke*, 107 Ill. App. 3d 21, 27 (1982)), which is impossible for a postjudgment order.

¶ 20    Mehalko additionally contends that Rule 219(d) is inapplicable, as it relates to abuses of discovery procedures. Mehalko argues that the dispute at issue is whether she violated the trial court's order that she not disclose Doe's real identity, which is a contempt issue. Mehalko asserts that, because Doe's counsel followed the trial court's misguided lead and chose the route of Rule 219 proceedings, it would be "beyond unjust" to now subject her to time-consuming and costly contempt proceedings. She argues that we also should not allow testimony taken in Rule 219 proceedings to be considered in contempt proceedings, as contempt proceedings have their own procedural safeguards that the trial court and Doe expressly rejected.

¶ 21    Doe, for her part, cites *Yow v. Jack Cooper Transport Co.*, 2015 IL App (5th) 140006, ¶ 26, for the proposition that a trial court has the inherent, common law authority to enforce its orders and impose sanctions for the failure to comply with its orders. She cites the same case in arguing that Rule 219 also vested the trial court with authority to enforce its protective order and sanction Mehalko for her unreasonable failure to comply. In *Yow*, the defendant concealed, until after the limitations period had run, the fact that its wholly owned subsidiary was potentially involved in the injury at issue. *Id.* ¶ 29. The plaintiffs learned of the concealment long after the case had been removed to federal court. *Id.* ¶¶ 8, 13. At issue was whether the trial court retained jurisdiction to impose sanctions. *Id.* ¶ 21. The appellate court stated that a trial court has the inherent authority to enforce its orders and that Rule 219 additionally vested the trial court with jurisdiction. *Id.* ¶ 23. That is, the appellate court agreed with the plaintiffs' argument that the trial court "retained residual jurisdiction to impose a sanction against [the] defendant pursuant to both Rule 219 and a court's inherent authority to enter a sanction." *Id.* ¶ 21. The appellate court stated that, although a state court could not take action on the merits of a case that had been removed to federal court, the state court could still sanction a party for preremoval conduct. *Id.* ¶ 25.

¶ 22    Doe argues that the instant case is like *Yow* in that both involve situations where the underlying case was no longer pending. Doe maintains that we should follow *Yow* instead of *Maggi* because *Yow* is a newer case that accurately applied Rule 219's plain meaning. She also argues that *Yow* shows that sanctionable violations can occur after a case is no longer pending—in addition to during the pendency of the litigation, as in *Gallo*.

¶ 23    We begin by addressing Mehalko's argument that Rule 219 sanctions were inappropriate here because such sanctions must ensure discovery and a trial on the merits. Our supreme court has stated that a "just order of sanctions under Rule 219(c) is one which, *to the degree possible*, insures both discovery and a trial on the merits." (Emphasis added.) *Shimanovsky v. General Motors Corp.*, 181 Ill. 2d 112, 123 (1998). *Shimanovsky* recognized that, as a last resort, a dismissal with prejudice or a sanction resulting in a default judgment is sometimes appropriate under Rule 219(c). *Id.* Therefore, we reject Mehalko's argument that Rule 219(c) sanctions must always be crafted to ensure a trial on the merits.

¶ 24    We also reject Mehalko's reliance on *Maggi*. There, the trial court imposed postjudgment sanctions for prejudgment misconduct that had recently been discovered, whereas here the

issue is essentially the trial court's postjudgment authority to enforce a prejudgment order.[2] Rule 219(c) explicitly provides that the trial court "may, by contempt proceedings, compel obedience by any party or person to any subpoena issued or order entered under these rules." Ill. S. Ct. R. 219(c) (eff. July 1, 2002). The order that Mehalko was found to have violated was a discovery order regarding Doe's deposition, which was "an order entered under these rules," so the trial court properly invoked its authority under Rule 219(c). We are not sure why the trial court also referenced Rule 219(d), as we agree with Mehalko that Rule 219(d) pertains to an abuse of discovery procedures and rules, not a violation of a discovery order. However, that reference to Rule 219(d) did not prejudice Mehalko in any way, so it provides no basis for reversal. This is especially true considering that subsection (d) provides that "the court may enter any order provided for in paragraph (c) of this rule." Ill. S. Ct. R. 219(d) (eff. July 1, 2002).

¶ 25 We have yet to fully resolve the question of jurisdiction. Generally, absent a timely filed postjudgment motion, the trial court loses jurisdiction 30 days after it enters the final judgment. *In re Marriage of Heinrich*, 2014 IL App (2d) 121333, ¶ 35. We recognize that Doe filed her petition for a rule to show cause after 30 days had passed. We further recognize that Rule 219(c) does not explicitly state that a trial court has continuing jurisdiction to enforce its orders through contempt proceedings. However, our supreme court has stated that a "court is vested with the inherent power to enforce its orders and to preserve the dignity of the court by the use of contempt proceedings." *Cole*, 2017 IL 120997, ¶ 18. A court's contempt power does not depend on constitutional or legislative grant, and it may not be restricted by legislative enactment. *In re L.W.*, 2016 IL App (3d) 160092, ¶ 25. A court's inherent authority to enforce its orders gives it jurisdiction to enter a rule to show cause. *Anderson Dundee 53, L.L.C. v. Terzakis*, 363 Ill. App. 3d 145, 156 (2005). Therefore, here the trial court's contempt powers provided it with jurisdiction to hear Doe's petition and impose sanctions for Mehalko's violations of the discovery order.

¶ 26 Mehalko acknowledges that the trial court had the authority to enforce its orders through contempt proceedings, but she argues that the Rule 219 proceedings did not provide the procedural safeguards of contempt proceedings. However, Rule 219 allows a trial court to enforce its discovery orders through contempt proceedings, which is simply an explicit incorporation of a trial court's inherent authority to enforce all of its orders by way of contempt. See *In re Marriage of Bonneau*, 294 Ill. App. 3d 720, 723 (1998) (equating a trial court's contempt power under Rule 219(c) with its inherent power to enforce its orders through contempt); see also *Yow*, 2015 IL App (5th) 140006, ¶ 29 (the trial court retained jurisdiction pursuant to both Rule 219(c) and its inherent authority to sanction a defendant). Thus, under the facts of this case, the proceedings would have been identical whether the trial court invoked Rule 219 or its inherent authority, or both.

¶ 27 The remaining question is whether the trial court followed the proper procedure for contempt proceedings. The proper procedure depends on the type of contempt at issue. *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 19. Contempt may be classified as either criminal or civil and either direct or indirect. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 39. Whether contempt is direct or indirect depends on where the contemptuous conduct

---

[2]*Yow* is distinguishable for this same reason, though we later cite some of its general language.

occurred; if it occurred in the court's presence, the contempt is direct, and if it occurred outside the court's presence, it is indirect. *Id.* Mehalko's conduct occurred outside the court's presence, so it is indirect contempt.

¶ 28 To determine whether contempt is civil or criminal, we consider the purpose for which the sanction was imposed. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. Contempt is civil if the sanction's main purpose is to coerce future conduct, and the person held in civil contempt must have the ability to purge the contempt by complying with the court order. *Id.* That is, the civil contemnor must be provided with the proverbial keys to his cell. *In re Marriage of Knoll*, 2016 IL App (1st) 152494, ¶ 56. Therefore, contempt based on past actions that cannot be undone cannot be civil contempt. *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 26. Contempt is criminal if the sanction is intended to punish past actions that cannot be undone, as opposed to coercing the party to comply with court orders. *Id.* ¶ 27.

¶ 29 Doe argues that she sought enforcement of the protective order to cease online harassment, rather than as punishment. We note that, in her reply in support of her petition for a rule to show cause, Doe argued that the rule to show cause was just the first step to determining how Mehalko's contemptuous behavior was best addressed, and "[w]hether the Court wants to hold her in civil contempt, and offer her a chance to purge herself by deleting the offensive comments and Facebook pages, or whether the Court wants to throw her in jail after having provided her with the Constitutional due process such a course of action would require, that is up to the Court." Mehalko argues that criminal contempt was at issue because the behavior had ceased and the Facebook posts had been deleted before the evidentiary hearing took place. However, in her reply, Doe disputed this point and alleged that Mehalko had in fact created a new Facebook page, ostensibly administered by Doe's deceased mother-in-law, that revealed Doe's identity as the person behind the Opposing Voices page. Additionally, at oral argument, Doe represented that the new Facebook page was still up at the time of the evidentiary hearing, whereas Mehalko stated that the trial court found that it had been removed. Mehalko failed to include a transcript of that hearing in the record, so we must resolve any doubts arising from the lack of a complete record against her. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (the appellant has the burden to provide a sufficiently complete record of trial proceedings to support his or her claims of error, and the reviewing court will resolve any doubts that arise from the incompleteness of the record against the appellant).

¶ 30 In its written order, the trial court agreed with Doe that Mehalko was behind the new Facebook page showing Doe's mother-in-law and revealing Doe's identity, ruling that Mehalko created the page on or about May 29, 2017. That date was weeks after Doe filed her petition for a rule to show cause, belying Mehalko's argument that any alleged violations were purely historical and that she required no coercion to comply with the protective order. Further, as stated, because we lack a transcript of the evidentiary hearing, we cannot presume that the trial court found that the new Facebook page had been removed by the time of the hearing. The trial court ultimately sanctioned Mehalko by ordering her to pay attorney fees and enjoining her from referring to or identifying Doe. "It is appropriate in both civil and criminal contempt cases to require the contumacious party to bear the reasonable costs and attorney fees of a contempt proceeding ***." *Harper v. Missouri Pacific R.R. Co.*, 282 Ill. App. 3d 19, 30 (1996). Therefore, the imposition of attorney fees does not alone render the contempt action criminal. As the trial court did not impose any additional punishment, but rather sought to enforce its protective order, we conclude that the proceedings were civil. This corresponds to

the trial court's invocation of Rule 219(c), which references compelling a party's obedience to a discovery order.

¶ 31 In indirect civil contempt proceedings, a respondent is entitled to minimal due process, which consists of notice and an opportunity to be heard. *In re Marriage of Weddigen*, 2015 IL App (4th) 150044, ¶ 34. The proceedings at issue explicitly began as contempt proceedings, with Doe filing a petition for a rule to show cause. The trial court granted that petition and held an evidentiary hearing. Therefore, Mehalko received the minimal due process required for indirect civil contempt proceedings. Still, as discussed, a person held in civil contempt must be able to purge himself of the contempt. *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 40. The trial court's order here failed to include such a purge provision. Accordingly, we must remand the cause so that the trial court may hold a limited hearing on the issue and include a purge provision in its order. *Cf. McGary v. Illinois Farmers Insurance*, 2016 IL App (1st) 143190, ¶ 43 (remanding cause for trial court to, among other things, include a purge provision in its indirect civil contempt order imposed under Rule 219(c)).

¶ 32                                III. CONCLUSION

¶ 33 For the reasons stated, we remand this cause to allow the Winnebago County circuit court to include a purge provision in its order. The order is otherwise affirmed.

¶ 34 Affirmed.

¶ 35 Cause remanded.