(No. 62862.

(No. 62936.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. MARVIN JONES *et al.* (Clifton Harris, Appellant).—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. KENNETH ROSS *et al.*, Appellees.

*Opinion filed February 11, 1988.—Rehearing denied April 5, 1988.*

CUNNINGHAM, J., took no part.

Steven Clark, Deputy Defender, and Deborah Liebow, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Thomas V. Gainer, Jr., Peter D. Fischer and Mark F. Smolens, Assistant State's Attorneys, of counsel), for the People.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Joan S. Cherry, Peter D. Fischer, Mark F. Smolens and Thomas V. Gainer, Jr., Assistant State's Attorneys, of counsel), for the People.

James J. Doherty and Paul P. Biebel, Jr., Public Defenders, and Robert P. Isaacson, Assistant Public Defender, of Chicago, for appellee Kenneth Ross.

Frederick F. Cohn and Robert G. Freeman, of Chi-

cago, for appellee Mark Mosley.

JUSTICE RYAN delivered the opinion of the court:

In an information filed in the circuit court of Cook County, defendants in cause No. 62862, Clifton Harris and Marvin Jones, were charged with armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2). Following a bench trial at which Harris and Jones were jointly represented, they were convicted and sentenced to nine years' imprisonment. The appellate court affirmed in a Rule 23 order (87 Ill. 2d R. 23; 136 Ill. App. 3d 1157 (unpublished Rule 23 order)), and we allowed Harris' petition for leave to appeal (103 Ill. 2d R. 315(a)). In cause No. 62936, defendants Kenneth Ross and Mark Mosley were charged by indictment in the circuit court ·of Cook County with three counts of murder (Ill. Rev. Stat. 1983, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)) and one count of armed robbery (Ill. Rev. Stat. 1983, ch. 38, par. 18—2). Following a joint jury trial, defendants were convicted and sentenced to 40 years' and 35 years' imprisonment, respectively. The appellate court reversed (138 Ill. App. 3d 1089), and we allowed the People's petition for leave to appeal (103 Ill. 2d R. 315(a)).

These consolidated causes present the question whether joint representation of defendants establishes a sixth amendment claim of denial of the effective assistance of counsel when it is alleged that the admission of inculpatory and inconsistent pretrial statements from each defendant created a conflict of interest.

At trial in No. 62862, Harris and Jones were represented by Marijane Placek and Thomas Verdun, both attorneys from the Cook County public defender's office. The two attorneys worked as a team on Harris and Jones' defense. It is not disclosed why each attorney did not represent an individual defendant. It should be noted that such joint representation has been severely criti-

cized. (See *United States ex rel. Cole v. Lane* (7th Cir. 1985), 752 F.2d 1210, 1217 n.9.) At trial, the prosecutor presented testimony from the victim, the arresting officers, and the assistant State's Attorney who took defendants' statements shortly after their arrest. Assistant State's Attorney Brandwein testified to the contents of Jones' statement as follows:.

> "At that time he told me he was in a bar with the victim, Susan Taylor. That they left the bar and they went to a park where he knew his friend Mr. Harris would be going. He stated at that time while he was in the park Mr. Harris came up with a gun and took and had Miss Taylor take off her jewelry and her money.
>
> * * *
>
> He stated after she took off her jewelry and her money, that he picked up the jewelry and the money and he ran and left the defendant Harris with Miss Taylor."

Brandwein then testified as to defendant Harris' comments:

> "He stated he was in a bar with Mr. Jones and that they met the victim, Susan Taylor, in the bar. He stated that they then left to buy some drugs and that they went to a park. He stated at that time he paid for some drugs and then wanted his money back and he demanded his money back and Miss Taylor refused to give him his money and she went for her waistband. He stated at that time he grabbed her and pulled out a gun from Miss Taylor's waistband. He took back his money and he ran, leaving Defendant Jones with Miss Taylor."

At that point in the testimony, the court, noting the factual inconsistencies between the two statements, called them to defense counsel's attention. Mr. Verdun then commented, "I can see the Court's point, and I think at this point I don't think the gravity of the conflicts in the statements were clear to me before that." The prosecutor then requested defense counsel to explain the precise nature of the conflict. Mr. Verdun re-

sponded, "Well, Judge, I think the conflict, if both defendants were to testify, is inherent in their statements ***." After noting that "[u]nder this circumstance, that statement by this police officer [sic] could be construed so that as to Harris it could be exculpatory and as to the other defendant it could be inculpatory," the court concluded that "[m]aybe there is no problem but I think it is close enough that we should examine it only for the purpose of trying to save a little time."

The appellate court held that defendants had failed to establish that an actual conflict of interest was present as to either Jones or Harris, citing *People v. Washington* (1984), 101 Ill. 2d 104, 112. The court noted that Jones, in his testimony at trial, had denied making the statement testified to by the assistant State's Attorney and had adopted Harris' version of events. The court found that assertions by Harris that Mr. Verdun and Ms. Placek "had a problem" with the joint representation failed to establish the existence of an actual conflict of interest at trial. Jones' case is not before this court in this appeal.

In No. 62936, Kenneth Ross and Mark Mosley were accused of participating with at least one other person in the armed robbery and murder of a pizza deliveryman. Both defendants were represented at trial by the same privately retained counsel. Counsel made no pretrial motions to suppress defendants' statements or to sever the trials. The principal evidence at trial consisted of inculpatory post-arrest statements made by each defendant to the police. The statements were essentially similar, differing only in that each defendant claimed that he had been the lookout and the other had been at or inside the automobile. Defense counsel, in his opening statement, briefly commented that the statements were "inconsistent with each other, meaning if one is true the other cannot be and so forth." When moving for a directed

verdict at the close of the State's evidence, defense counsel argued:

> "I feel that the evidence is such that the State has not established a *prima facie* case as to each defendant, the only evidence being the statement by each defendant which the State chose to interpret as a confession but certainly statements are mutually exclusive. If one is true the other one cannot be * * *."

During presentation of his case in chief, defense counsel pursued a theory of defense that both defendants' statements were coerced, and that defendants had not been involved in the shooting. Mosley testified to that effect, repudiating his post-arrest statement. He stated that he was in the vicinity when the crimes took place, but had not been involved. He also stated that he did not see Ross participating in the offenses. Ross did not testify.

In his closing argument, defense counsel pointed out to the jury that the post-arrest statements were inconsistent because each defendant claimed that he had only played the role of lookout. Counsel emphasized the circumstances surrounding the investigation and the involuntariness of the statements. After the jury returned a verdict of guilty as to both defendants, defense counsel filed a motion for a new trial for both defendants jointly, alleging that the verdict was against the weight of the evidence, and that the prosecutor's inflammatory remarks in closing argument denied defendants a fair trial.

The appellate court held that both Ross and Mosley were denied effective assistance of counsel. (138 Ill. App. 3d at 1098.) The court reasoned that each defendant became a witness against the other when his pretrial statement came into evidence; however, defense counsel was unable to effectively cross-examine either of them when he represented them both, thus creating a clear conflict of interest. 138 Ill. App. 3d at 1098.

The Supreme Court has applied two distinct approaches to the problem of joint representation of codefendants. The first is employed in situations where a potential conflict is brought to the attention of the trial court by counsel before trial or at an early stage of the trial. (*Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173.) Once alerted by counsel to a potential problem, the trial court must take adequate steps to deal with it. If adequate steps are not taken, the fact of a *potential* or *possible* conflict may deprive the defendant of the guaranteed assistance of counsel, because of the necessity of counsel's tailoring the defense to accommodate the conflict.

The second approach is utilized where a conflict is not brought to the attention of the trial court. In that setting, a defendant must demonstrate the existence of an *actual* conflict of interest manifested at trial. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708; *People v. Berland* (1978), 74 Ill. 2d 286.

Thus, the first step in our analysis must be to ascertain whether the potential conflict was brought to the attention of the trial court within the meaning of *Holloway*. As noted earlier, the issue of a conflict was first raised *sua sponte* by the trial court after Jones' statement was read into evidence by an assistant State's Attorney. During the ensuing bench discussion, defense counsel acknowledged that he had not previously recognized the "gravity of the conflict in the statements." Defense counsel went on to state that at that point he "had only planned on putting on one" defendant to testify. As the trial proceeded only Jones testified, and he repudiated his earlier statement inculpating Harris and gave testimony corroborating Harris' exculpatory post-arrest statement. At the close of the People's case, the court invited defense counsel to move for mistrial if they thought a conflict was present. When proceedings re-

sumed the next day, defense counsel moved for mistrial, but based the motion largely on certain surprise testimony of the victim. While the conflict issue was obliquely referred to, counsel failed to articulate the nature of the conflict, and the motion for mistrial was denied.

Based upon this record, we find that the actions and comments of defense counsel were insufficient assertions of a conflict of interest to merit reversal under *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173. In *Holloway*, defense counsel stated prior to trial that he could not adequately represent codefendants' interests due to the testimony he knew they would give. Motions for separate counsel were made as well. The court, however, denied those motions, and took no other steps to ascertain the degree of risk of conflict.

In this case, in contrast, defense counsel did not seek severance or appointment of separate counsel. Moreover, the potential conflict was raised only by the trial court *sua sponte*. Finally, when given an opportunity to seek mistrial on the basis of conflict, counsel was utterly unable to articulate how its defense strategy was inhibited or even affected by the alleged conflict. Thus, this is not a case in which, as in *Holloway*, counsel was forced to proceed after his repeated objections were disregarded. We find that the *Holloway* standard was not satisfied.

We therefore turn to the "actual conflict manifested at trial" standard as articulated in *Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708. Under this approach, the burden is placed on the defendant to show with some specificity that an actual conflict of interest adversely affected his representation. (446 U.S. at 349, 64 L. Ed. 2d at 347, 100 S. Ct. at 1718.) Hypothetical or speculative conflicts will not suffice to establish a violation. (*People v. Robinson* (1979), 79 Ill. 2d 147, 169.) It must be shown that counsel actively rep-

resented conflicting interests. (*Cuyler*, 446 U.S. at 350, 64 L. Ed. 2d at 347, 100 S. Ct. at 1719.) Where the record presents no indication that the defense of either co-defendant was inhibited to any degree because of the joint representation, a reversal of a conviction is not required. *People v. Robinson* (1979), 79 Ill. 2d 147, 171.

Applying these principles, we conclude that there was no conflict present here which adversely affected Harris' representation; where Jones took the stand, denied making the statement inculpating Harris, and essentially corroborated Harris' pretrial exculpatory statement, we can perceive no adverse effect on defense counsel's inability to cross-examine Jones. (See *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723.) Furthermore, the record does not establish that defense counsel were influenced in their selection of a defense strategy by the fact of the joint representation; in fact, it is clear that defense counsel were unaware of even the possibility of a conflict until the court called their attention to it. After discussion of the matter, defense counsel chose to pursue their original plan, allowing only Jones to testify. Nor is there any convincing evidence of a plausible defense strategy which independent counsel for Jones and Harris might have pursued.

Harris relies heavily upon *People v. Cade* (1981), 97 Ill. App. 3d 354, for the proposition that the introduction of mutually inculpatory statements always results in an actual conflict of interest at trial. In *Cade*, as here, the defendant made statements prior to trial implicating himself and his codefendant. The codefendant in *Cade* made a similar statement, but denied from the stand that he had made a statement implicating the defendant. Cade, like Harris in our case, did not testify. Relying on *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723, the appellate court in *Cade* held that there was a material hostility between the codefendants,

and that the defendant Cade was denied effective assistance of counsel because one defendant had become a witness against the other. 97 Ill. App. 3d at 357.

Here, as did the codefendant in *Cade*, Jones repudiated his earlier inculpatory statement and asserted a story consistent with that of Harris. Counsel for Harris had no reason to cross-examine Jones when he testified favorably to Harris; indeed, Jones' "testimony respecting his alleged out-of-court statement was more favorable to the respondent than any that cross-examination by counsel could have produced, had [Jones] 'affirmed the statement as his.' " (*Nelson v. O'Neil* (1971), 402 U.S. 622, 629, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723, 1727.) We thus conclude that no material hostility existed at trial and no conflict of interest created a lapse in Harris' representation. Under these circumstances, Harris was not denied effective assistance of counsel by virtue of the joint representation. As noted earlier, Jones' case is not before us. To the extent that *Cade* is inconsistent with this holding, *Cade* is overruled.

We next address the conflict of interest issue raised in No. 62936. Sometime after they were arrested, defendants Ross and Mosley made separate statements to the police. Each admitted participating in the armed robbery and murder of a pizza deliveryman, but each claimed that he participated only as a lookout. At trial, Mosley denied all involvement in the crimes and claimed that he and Ross had been in a local game room and that their confessions had been coerced. Ross did not testify. From the beginning of the trial, defense counsel's arguments focused on this theory of coercion. No motion for severance was made, nor were any possibilities of conflict raised by defense counsel, the prosecutor, or the court. The appellate court specifically found that an actual conflict of interest arose due to defense counsel's alleged inability to challenge the inculpatory portions of

each defendant's extrajudicial statements. 138 Ill. App. 3d at 1099.

The People now contend that defense counsel chose the best strategy based upon the evidence available, consistently pursued this defense with vigorous cross-examination of witnesses to the statements made by defendants and, in general, never departed from the trial strategy. The People urge that since both defenses were consistent and neither conflicting nor antagonistic, and since the trial counsel vigorously pursued this strategy at trial, the appellate court's finding of an actual conflict of interest manifested at trial was speculative and manifestly erroneous.

In support of their proposition that an actual conflict of interest was manifested at trial, defendants Mosley and Ross maintain that the appellate court correctly found that the introduction of mutually inculpatory statements demonstrated an antagonism in defenses which created an actual conflict, rendered defense counsel incapable of fully and effectively cross-examining witnesses adverse to each defendant, and thereby deprived defendants of the full and effective assistance of counsel. Under the circumstances present here, however, we cannot accept either of these extremes. Rather, we find that a conflict existed which was apparently resolved to Mosley's detriment. We therefore find that Mosley was denied effective assistance of counsel, and affirm the appellate court as to Mosley. We reverse, however, as to Ross.

We reach these conclusions by application of *Nelson v. O'Neil* (1971), 402 U.S. 622, 29 L. Ed. 2d 222, 91 S. Ct. 1723. In that case, a codefendant made an unsworn oral statement, admitted the theft of an automobile and implicated the defendant as his accomplice. At trial, the codefendant took the stand in his own defense and denied having made the inculpatory statement. The defend-

ant testified similarly. Reiterating the holding in *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, that a defendant's constitutional right to confrontation is violated only when the out-of-court hearsay statement is that of a declarant who is unavailable at the trial for "full and effective" cross-examination, the Supreme Court held that a defendant is not denied his sixth amendment rights when his codefendant takes the stand, denies making the alleged out-of-court statement implicating the defendant, and testifies favorably to the defendant concerning the underlying facts. 402 U.S. at 629, 29 L. Ed. 2d at 228, 91 S. Ct. at 1727.

Applying these principles compels the conclusion that defendant Ross stands in much the same position as the defendant in *Nelson*, and as Harris in our companion case. Although Mosley's inculpatory statement was entered into evidence against him, Mosley took the stand and repudiated it as coerced. Thus, no hostility existed between Mosley and Ross, and there was no need for Ross to impeach Mosley, because his "testimony respecting his alleged out-of-court statement was more favorable to [Ross] than any that cross-examination by counsel could possibly have produced had [Mosley] 'affirmed the statement as his.' " *Nelson v. O'Neil* (1971), 402 U.S. 622, 629, 29 L. Ed. 2d 222, 228, 91 S. Ct. 1723, 1727.

The same cannot be said from the standpoint of defendant Mosley. Ross' inculpatory statement was used against Mosley, but Ross did not testify at trial. Thus, this damaging testimony went before the fact finder unrepudiated and unimpeached. We need not speculate as to the reasons for Ross' decision not to testify. It is enough to say that that decision did not operate to Mosley's benefit, and that counsel with no conflict, perhaps at separate trials, would surely have proceeded differently. If Ross' statement was not to be repudiated,

counsel with no conflict would have at least sought to impeach it. We therefore find that a conflict of interest arose which manifested itself at trial to Mosley's detriment. The presence in evidence of Ross' statement implicating Mosley violated Mosley's right to confrontation. (See *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) The joint representation of the two defendants in one trial created a clear conflict as to Mosley, because when Ross declined to testify, there was no way that Mosley's attorney could effectively deal with the implicating statement. See *United States ex rel. Cole v. Lane* (7th Cir. 1985), 752 F.2d 1210, 1215.

The State argues that Ross' failure to testify and submit to cross-examination was not detrimental to Mosley because their extrajudicial statements "interlocked" under *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132. In *Parker* the pretrial confessions of all the defendants which were introduced in evidence were interlocking in that they demonstrated the involvement of each defendant concerning such crucial facts as time, locality, felonious activity, and awareness of the overall plan or scheme. Although recognizing the possibly devastating consequences of an extrajudicial statement by a nontestifying codefendant to a nonconfessing defendant, the Supreme Court noted that the same devastating effect was not present when the defendant's own confession was properly introduced at trial and that the right of cross-examination had far less practical value to a defendant who had confessed to the crime than to one who had consistently maintained his innocence. The Supreme Court, with a four-member plurality, held that the introduction of "interlocking confessions" with the proper cautionary instructions did not violate a defendant's rights under the sixth and fourteenth amendments, as announced in *Burton*. Thus, the State

argues, Ross' statements were admissible in any event, and his failure to testify was not damaging to Mosley.

However, the Supreme Court has recently overruled *Parker* on this point. In *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, the Court held that nontestifying codefendants' confessions incriminating the defendant were inadmissible at a joint trial, even though the statements could be characterized as interlocking. Thus, under *Cruz,* it cannot be said that Mosley was not prejudiced by the use of Ross' statement and the subsequent failure of Ross to testify. Mosley is entitled to a new trial.

For the reasons stated, we affirm the judgment of the appellate court as to defendant Harris in cause No. 62862. In cause No. 62936, we reverse the judgment of the appellate court as to defendant Ross, and affirm as to defendant Mosley.

> *No. 62862 — Appellate court affirmed.*
> *No. 62936 — Appellate court affirmed*
> *in part, reversed in part.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.