# Illinois Official Reports

## Supreme Court

---

### *People v. Cole*, 2017 IL 120997

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SALIMAH COLE (Amy P. Campanelli, Appellant). |
| Docket No. | 120997 |
| Filed | November 30, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Michele Pitman, Judge, presiding. |
| Judgment | Circuit court judgment affirmed. Adjudication of direct civil contempt vacated. |
| Counsel on Appeal | Michael A. Scodro and Samuel D. Block, of Mayer Brown LLP, and Charles B. Sklarsky, Clifford W. Berlow, Ramon Villalpando, Briana T. Sprick Schuster, and Nathaniel K.S. Wackman, of Jenner & Block LLP, both of Chicago, for contemnor-appellant. Lisa Madigan, Attorney General, of Springfield, and Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People. Thomas F. Geselbracht, of DLA Piper LLP (US), of Chicago, for *amicus curiae* National Association for Public Defense. |

Kimberly A. Jansen and Leigh C. Bonsall, of Hinshaw & Culbertson LLP, of Chicago, for *amici curiae* Vivien Gross, of Chicago Kent College of Law, and Steven Lubet and Robert Burns, of Northwestern Pritzker School of Law.

Carol A. Brook, Martin V. Sinclair, Jr., Sarah L. Rosenbluth, and Natalie Feigenbaum, all of Chicago, for *amicus curiae* National Association of Criminal Defense Lawyers.

Justices      JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Karmeier and Justices Freeman, Kilbride, Garman, Burke, and Theis concurred in the judgment and opinion.

## OPINION

¶ 1      On June 15, 2016, the circuit court of Cook County entered an order of adjudication of direct civil contempt against contemnor, Amy P. Campanelli, the Cook County public defender, and sanctioned Campanelli $250 per day until she purged herself of direct civil contempt or was otherwise discharged by due process of law. Campanelli filed a notice of appeal to the Appellate Court, First District. Campanelli also filed an emergency motion to stay the fines imposed by the trial court. The appellate court granted Campanelli's motion to stay the fines.

¶ 2      The State then filed a motion for direct appeal to this court pursuant to Illinois Supreme Court Rule 302(b) (eff. Oct. 4, 2011). On July 29, 2016, this court allowed the State's motion for direct appeal and transferred the appeal of the case from the appellate court to this court. This court also allowed the National Association of Criminal Defense Lawyers, the National Association for Public Defense, and Professors Vivian Gross, Steven Lubet, and Robert Burns to file *amicus curiae* briefs in support of contemnor Campanelli. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 3                           BACKGROUND

¶ 4      Defendant Salimah Cole was charged in a 16-count indictment with 6 counts of first degree murder, 2 counts of armed robbery with a firearm, 5 counts of aggravated kidnapping, 1 count of aggravated arson, and 2 counts of possession of a stolen motor vehicle. The charges stemmed from the September 30, 2015, shooting, robbery, and kidnapping of La Prentis Cudjo and the robbery and kidnapping of Charles Morgan. Ashley Washington, Allen Whitehead, Zacchaeus Reed Jr., Julian Morgan, and Brianna Sago were also charged in connection with those crimes.

¶ 5    Cole appeared in court on April 12, 2016. A Cook County assistant public defender appeared as a friend of the court, as well as to defendant Cole, and informed the court that Cole's mother had retained private counsel, who would need a continuance of a week or two. Accordingly, the trial court set the next court date for May 10, 2016.

¶ 6    At the May 10, 2016, court date, Cole informed the trial court that she was not able to afford private counsel. The trial court stated that it would appoint the public defender to represent Cole. Contemnor Amy P. Campanelli, the public defender of Cook County, then asked the court not to appoint the office of the public defender to represent Cole. Campanelli asked for leave of court to file a notice of intent to refuse appointment and to ask for appointment of counsel other than the public defender. When asked to explain her motion, Campanelli stated that she actually was refusing the appointment. Campanelli informed the court that the public defender could not represent Cole because there was a conflict of interest due to the codefendants in the case. Campanelli explained that four of Cole's five codefendants were charged with the exact same offenses as Cole. In addition, codefendants Reed and Whitehouse were also charged with intimidation of codefendant Washington, for threatening to harm Washington and her family if she worked with the police on the murder case.

¶ 7    The trial court then asked Campanelli to explain the direct conflict to the court. Campanelli clarified that there was a potential for conflict. Campanelli asserted that she did not have to wait until a conflict developed, nor could she divulge attorney-client privileged information in order to inform the court of those conflicts. After considering the matter, the trial court appointed the public defender of Cook County to represent Cole, over Campanelli's objection. Campanelli asked the court to hold her in friendly contempt and to impose a nominal sanction so that she could seek appellate review of the court's decision. The trial court took the request under advisement and asked Campanelli to put the basis for her refusal to represent Cole in writing.

¶ 8    Campanelli then filed a notice of intent to refuse appointment and to request appointment of counsel other than the public defender of Cook County. In her notice, Campanelli argued that every client has a right to be represented by conflict-free counsel and that concurrent conflicts of interest are prohibited by Rule 1.7 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010). Campanelli noted that Rule 1.7 provided that conflicts arise whenever the interests of one client are directly adverse to the interests of another client or whenever the representation of a client is materially limited. Based upon Rule 1.7, Campanelli stated that she could not accept appointment to represent Cole when she was already representing five other codefendants. Campanelli indicated that she also had moved to withdraw from representing codefendants Whitehead, Reed Jr., Morgan, and Sago, due to concurrent conflicts with one another and with codefendant Washington.[1] Because she was bringing the conflict of interest to the court's attention at an early stage, Campanelli claimed that it was incumbent on the court to take action and alleviate the conflict by appointing private counsel.

¶ 9    In addition to citing Rule 1.7, Campanelli contended that the office of the Cook County public defender had a conflict of interest in representing Cole because the office of the Cook County public defender is a law firm as set forth in Rule 1.10 of the Illinois Rules of

---

[1]At a hearing on July 18, 2016, the trial court granted Campanelli's motion to withdraw from the representation of codefendants Whitehead and Reed, finding a conflict of interest existed where Whitehead and Reed had been charged with intimidating codefendant Washington.

Professional Conduct of 2010 (eff. Jan. 1, 2010). Consequently, Campanelli refused to accept appointment to represent Cole.

¶ 10     At a hearing on May 19, 2016, the trial court found that Cole was indigent and should be represented by the office of the Cook County public defender. Campanelli again told the court that she could not represent Cole because she was in conflict due to her representation of five other codefendants in the case. Campanelli stated that, pursuant to the Illinois Rules of Professional Conduct adopted in 2010, she could not represent more than one client on a case because of the potential conflict. Campanelli also noted that the Counties Code (55 ILCS 5/3-4006 (West 2016)) allows a court to appoint counsel other than the public defender if the appointment of the public defender would prejudice the defendant. The trial court pointed out that it had not made a finding that appointment of the public defender would prejudice the defendant. Campanelli conceded that the trial court had not made a finding of prejudice but stated she had given the trial court enough testimony that she would be in conflict of interest if forced to represent Cole.

¶ 11     In response to further questioning from the trial court, Campanelli stated that there were approximately 518 attorneys in the office of the Cook County public defender and that those 518 attorneys did not all share the same supervisors. With regard to the four other motions to withdraw that Campanelli had filed concerning Cole's codefendants, Campanelli acknowledged that she had four separate attorneys from different divisions in her office representing those defendants. In addition, those assistant public defenders each had a different supervisor, but those supervisors might report to the same deputy director. Campanelli conceded that she has a multiple defender division for multiple offender cases but contended that she was in conflict even in those cases.

¶ 12     The trial court then reiterated that defendant Cole was in custody without legal representation, that Cole was indigent and had a right to counsel, and that, as public defender of Cook County, Campanelli was sworn to represent an indigent defendant unless the court finds that the defendant's rights would be prejudiced. The trial court observed that it had not found Cole's rights to be prejudiced, so that Campanelli's refusal to represent Cole was contemptuous. Campanelli continued to refuse to follow the order of the court to represent Cole, repeating that she could not represent Cole due to a conflict. Campanelli denied that she was violating the Counties Code in refusing to represent Cole, arguing that in fact she would be violating the Illinois Rules of Professional Conduct of 2010 in representing Cole.

¶ 13     The trial court again stated that Campanelli was sworn to represent an indigent defendant unless the court finds that the defendant's rights would be prejudiced. The trial court did not find Cole's rights to be prejudiced and asked Campanelli to carefully consider her refusal to represent Cole. The trial court then continued the case for ruling on Campanelli's request for contempt. The trial court also appointed private counsel to represent Cole in light of Campanelli's refusal.

¶ 14     Campanelli next appeared before the court on June 15, 2016. The trial court noted that it had appointed private counsel for Cole because she was an indigent defendant without representation of counsel. The trial court repeated that it had found there was no conflict in Campanelli representing Cole and again ordered Campanelli to represent Cole, indicating that it would vacate the appointment of private counsel upon Campanelli's acceptance of the appointment.

¶ 15    Campanelli again stated that she was in conflict in representing Cole, the sixth defendant in a six-defendant murder case, when she already represented five of those defendants. Campanelli indicated that she had filed motions to withdraw with regard to four of the five other defendants, as she was in conflict of interest with those defendants also. Campanelli conceded that she had separate attorneys assigned to those defendants but contended that, under the Counties Code (55 ILCS 5/3-4006 (West 2016)), she was the attorney for every client assigned to her office. Campanelli also asserted that her office was a law firm and wanted to be treated like any other law firm in the state of Illinois for purposes of conflict of interest. Campanelli stated that she represents every client in the public defender's office and had a right to know every fact, every strategy, and every defense of every case. If not allowed to know the confidences between lawyers, she would not be acting as the public defender of Cook County.

¶ 16    The trial court again ordered Campanelli to represent Cole and warned that her refusal to represent Cole would be in direct contempt of court. Campanelli responded that she continued to refuse to represent Cole. The trial court therefore found that Campanelli had willfully and contemptuously refused to accept the trial court's appointment to represent Cole after being ordered to do so. The trial court found Campanelli's refusal to be without basis, as there was no prejudice to Cole if Campanelli accepted the appointment. The trial court therefore ordered that Campanelli was in direct civil contempt for her willful failure to obey a direct order of the court. The trial court imposed a sanction consisting of a fine of $250 per day until such time as Campanelli purged herself of direct civil contempt by accepting appointment as counsel for defendant Cole or until she was otherwise discharged by due process of law.

¶ 17                                                ANALYSIS

¶ 18    This case comes before this court on appeal of the trial court's order finding Campanelli to be in direct civil contempt and imposing sanctions. A court is vested with the inherent power to enforce its orders and to preserve the dignity of the court by the use of contempt proceedings. *In re Baker*, 71 Ill. 2d 480, 484 (1978). An order cast in terms of a contempt proceeding imposing sanctions is a final and appealable order. *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 171-72 (1981). This is because the imposition of a sanction for contempt, while occurring within the context of another proceeding, "is an original special proceeding, collateral to and independent of, the case in which the contempt arises." *Id.* at 172. In reviewing the contempt order, we must examine the propriety of the trial court's order directing Campanelli to accept appointment as counsel for Cole. If the order was invalid, the contempt order must be reversed. *People v. Shukovsky*, 128 Ill. 2d 210, 222 (1988).

¶ 19    Whether a party is guilty of contempt is a question of fact for the trial court. *In re Marriage of Logston*, 103 Ill. 2d 266, 286-87 (1984). *Logston* held that a reviewing court will not disturb the trial court's finding unless it is against the manifest weight of the evidence or the record reflects an abuse of discretion. *Id.* at 287. In *Norskog v. Pfiel*, 197 Ill. 2d 60, 70-71 (2001), the court clarified that the proper standard of review depends on the question that was answered in the trial court. Thus, if the facts are uncontroverted and the issue is the trial court's application of the law to the facts, a reviewing court may apply *de novo* review. *Id.*

¶ 20    In this case, to the extent our review concerns application of this court's rules, we find that *de novo* review is appropriate. When interpreting supreme court rules, this court is guided by

the same principles applicable to construction of statutes. *People v. Salem*, 2016 IL 118693, ¶ 11. The construction of a statute is a question of law that is reviewed *de novo*. *People v. Smith*, 236 Ill. 2d 162, 167 (2010). To the extent our review concerns the trial court's adjudication of contempt, we find it is appropriate to apply an abuse of discretion standard.

¶ 21 In this court, as in the trial court, Campanelli argues that she is barred from representing Cole due to a conflict of interest between Cole and her codefendants. Campanelli asserts that any representation of more than one defendant in a multiple defendant case presents a conflict of interest for the office of the public defender. Campanelli claims a conflict based upon the sixth amendment to the United States Constitution (U.S. Const., amend. VI), article I, section 8, of the Illinois Constitution (Ill. Const. 1970, art. I, § 8), and Rules 1.10 and 1.7 of the Illinois Rules of Professional Conduct of 2010 (eff. Jan. 1, 2010).

¶ 22 Those accused of crime have a sixth amendment right to the effective assistance of counsel. *People v. Spreitzer*, 123 Ill. 2d 1, 13 (1988) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 343 (1980), and *Glasser v. United States*, 315 U.S. 60, 70 (1942)). Effective assistance of counsel means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. *Spreitzer*, 123 Ill. 2d at 13-14. The United States Supreme Court has held that requiring or permitting a single attorney to represent codefendants is not *per se* violative of the constitutional guarantee of the effective assistance of counsel. *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978). The court in *Spreitzer* also recognized that treating multiple representation of codefendants as creating a *per se* conflict would put an end to multiple representation altogether, "since a 'possible conflict inheres in almost every instance of multiple representation,' and a *per se* rule would 'preclude multiple representation even in cases where "[a] common defense *** gives strength against a common attack." ' " *Spreitzer*, 123 Ill. 2d at 17 (quoting *Cuyler*, 446 U.S. at 348, quoting *Glasser*, 315 U.S. at 92). *Cuyler* recognized, however, that since a possible conflict of interest inheres in almost every instance of multiple representation, a defendant who objects to multiple representation must have the opportunity to show that potential conflicts imperil his right to a fair trial. *Cuyler*, 446 U.S. at 348.

¶ 23 Campanelli maintains that she did show that potential conflicts imperiled Cole's right to a fair trial, so that the trial court erred in finding her in direct contempt of court. In making this argument, Campanelli contends that representation by the office of the Cook County public defender is tantamount to representation by a single attorney for purposes of conflict of interest analysis. Consequently, before we address whether Campanelli established that potential conflicts imperiled Cole's right to a fair trial, we first must address Campanelli's claim that representation by the public defender constitutes representation by a single attorney.

¶ 24 In support of this argument, Campanelli points to Rule 1.10 of the Illinois Rules of Professional Conduct of 2010. Rule 1.10(a) provides:

> "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm." Ill. R. Prof'l Conduct (2010) R. 1.10(a) (eff. Jan. 1, 2010).

Comment 1 to Rule 1.10 explains:

"For purposes of the Rules of Professional Conduct, the term 'firm' denotes lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization. See Rule 1.0(c). Whether two or more lawyers constitute a firm within this definition can depend on the specific facts." Ill. R. Prof'l Conduct (2010) R. 1.10 cmt. 1 (eff. Jan. 1, 2010).

¶ 25 Campanelli argues that the office of the public defender is a "firm," which means that its associated members—the assistant public defenders—may not represent clients with conflicting interests. In making this argument, Campanelli acknowledges that *People v. Robinson*, 79 Ill. 2d 147 (1979), held that a public defender's office is not a firm. However, Campanelli maintains that *Robinson* did not resolve the question of whether the office of the public defender is a firm within the definition of Rule 1.10 because the *Robinson* decision predated the drafting of the written rules of professional conduct in Illinois.

¶ 26 The *Robinson* decision was filed in 1979. Campanelli points out that the Illinois Code of Professional Responsibility was adopted on June 3, 1980, and was replaced by the Illinois Rules of Professional Conduct in 1990, which then were substantially amended in 2010. Therefore, *Robinson* could not have resolved whether, under the current rules, the office of the public defender is an "association authorized to practice law" or "a legal services organization" because *Robinson* did not construe the language of Rule 1.10. Campanelli contends that, under the plain language of Rule 1.10, the office of the public defender fits either description, so that it is a "firm" within the plain meaning of Rule 1.10.

¶ 27 As Campanelli concedes, *Robinson* considered "whether the individual attorneys employed in the office of a public defender are members of an entity subject to the generally recognized rule that if an attorney is disqualified by reason of a conflict of interest that no other partner or associate of his firm may continue with the representation." *Id.* at 154. *Robinson* held that "the avoidance of conflicts of interest which result in failure to provide effective assistance of counsel does not require us to hold that the individual attorneys who comprise the staff of a public defender are members of an entity which should be subject to the rule that if one attorney is disqualified by reason of a conflict of interest then no other member of the entity may continue with the representation." *Id.* at 158-59.

¶ 28 Following *Robinson*, in *People v. Miller*, 79 Ill. 2d 454 (1980), the court reiterated that it had rejected the claim that a public defender's office is to be treated as a law firm or an "entity" in considering a conflict of interest claim. *Miller* explained that where one assistant public defender might not effectively represent two competing interests, "two assistants might be able to do so, and in determining whether separate assistants can properly represent competing interests, we are to apply the general guidelines enunciated in our prior cases and those of the United States Supreme Court on the subject of conflicts of interest." *Id.* at 461.

¶ 29 As noted, Campanelli claims that *Robinson* does not control on the issue of whether the office of the Cook County public defender is a firm for purposes of Rule 1.10 because *Robinson* was decided before the rules were adopted. Campanelli argues that the *Robinson* decision cannot be used to construe the plain language in Rule 1.10 defining "firm" because the *Robinson* court never addressed the language in the rule. In making this argument, however, Campanelli misunderstands this court's case law concerning the interpretation of statutes and court rules.

- 7 -

¶ 30    It is well settled that when statutes are enacted after judicial opinions are published, it must be presumed that the legislature acted with knowledge of the prevailing case law. *People v. Hickman*, 163 Ill. 2d 250, 262 (1994). As set forth *supra*, this court is guided by the same principles applicable to the construction of statutes when interpreting supreme court rules. *Salem*, 2016 IL 118693, ¶ 11. Consequently, in adopting the Illinois Code of Professional Responsibility, and later the Illinois Rules of Professional Conduct and the 2010 amendments to those rules, we presume that the court was well aware of its own case law holding that the office of the public defender is not a law firm for purposes of conflict of interest. This court has never departed from its precedent to expressly include the office of the public defender within the definition of a law firm, "association authorized to practice law," or "a legal services organization" in its Code of Professional Responsibility or Rules of Professional Conduct. Absent an express repudiation of the *Robinson* holding in this court's Rules of Professional Conduct, we find no basis to declare that *Robinson* is no longer good law or that Rule 1.10 now includes the office of public defender within its definition of law firms for purposes of a conflict of interest.

¶ 31    Campanelli then urges this court to overrule *Robinson*. Campanelli contends that *Robinson* failed to provide a reasoned analysis for its holding, relying as its sole explanation on "an unsupported statement" that treating the office of the public defender as a firm "would lead to the appointment of inadequate and inexperienced private counsel." Campanelli asserts that such speculation alone does not justify distortion of the plain meaning of Rule 1.10.

¶ 32    We again point out that the plain meaning of "firm" in Rule 1.10 necessarily excludes public defender offices from its definition. Moreover, the risk of appointing inadequate and inexperienced private counsel was not the basis for the *Robinson* decision. *Robinson* did consider case law from other jurisdictions, as well as the American Bar Association Standards Relating to the Administration of Criminal Justice, which found that a public defender's office is a firm for purposes of conflict of interest analysis. *Robinson* also considered the size and organization of the state's public defender offices. *Robinson* then concluded that, "[u]pon review of the authorities and consideration of the diversity of organization of the offices of public defenders," the avoidance of conflicts of interest did not require the court to hold that the public defender's office was analogous to a law firm. *Robinson*, 79 Ill. 2d at 158-59.

¶ 33    In reaching that conclusion, the court did note that, "[i]n many instances the application of such a *per se* rule would require the appointment of counsel with virtually no experience in the trial of criminal matters, thus raising, with justification, the question of competency of counsel." *Id.* at 159. Although the court noted that application of a *per se* rule might have such consequences, this was not the basis for the court's decision. Rather, *Robinson* balanced that possibility against the remote possibility that an experienced member of the public defender's staff might labor under a conflict of interest because another member of the staff was so burdened and found that the decisions of the United States Supreme Court, as well as its own decisions, furnished adequate guidance to avoid conflicts of interest which would impede the furnishing of effective assistance of counsel. *Id.* at 159-60.

¶ 34    The court later explained, in *People v. Lewis*, 88 Ill. 2d 429, 438 (1981), that the *Robinson* court "did not deem a personal allegiance or loyalty to the public defender's office sufficient to justify a rule that if one attorney employed by such an office were disqualified by reason of a conflict of interest, no other attorney employed by that office could undertake the

representation." The basis for the *Robinson* rule again was repeated in *People v. Banks*, 121 Ill. 2d 36, 42 (1987), where the court stated that "*Robinson* rejected a *per se* conflicts rule precisely because it finds that an assistant public defender's loyalty towards his office is not great enough to impute to him the conflicts of other assistants."

¶ 35    *Robinson*, then, based its holding on the fact that the adversary tendency of lawyers within the public defender's office was sufficient protection against a conflict of interest between assistant public defenders. This court and our appellate court have consistently applied *Robinson* for nearly 40 years. Consequently, we find no merit to Campanelli's claim that the decision was poorly reasoned and unworkable.

¶ 36    Having found that the office of the public defender is not a "firm" for purposes of Rule 1.10, we next address Campanelli's claim that Rule 1.7 bars the public defender from representing multiple defendants in a single prosecution. Rule 1.7 provides:

> "(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
>> (1) the representation of one client will be directly adverse to another client; or
>>
>> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." Ill. R. Prof'l Conduct (2010) R. 1.7 (eff. Jan. 1, 2010).

Campanelli also points to comment 23 to Rule 1.7, which explains that:

> "[S]imultaneous representation of parties whose interests in litigation may conflict, such as coplaintiffs or codefendants, is governed by paragraph (a)(2). A conflict may exist by reason of substantial discrepancy in the parties' testimony, incompatibility in positions in relation to an opposing party or the fact that there are substantially different possibilities of settlement of the claims or liabilities in question. Such conflicts can arise in criminal cases as well as civil. The potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant." Ill. R. Prof'l Conduct (2010) R. 1.7 cmt. 23 (eff. Jan. 1, 2010).

Campanelli argues that Rule 1.7 and comment 23 establish that conflicts are inevitable in cases of joint representation of codefendants.

¶ 37    While Rule 1.7 and comment 23 warn of the risk of joint representation of codefendants, the rule and comment address the representation of multiple defendants by one attorney. The issue here, in contrast, is whether representation of codefendants by different assistant public defenders presents a conflict of interest. *Spreitzer* explained that "[t]he asserted danger in the *Banks-Robinson-Spicer* line of cases was not so much that a single lawyer would attempt to represent the conflicting interests of two defendants as that a lawyer's loyalty to his client would be diluted by a conflicting allegiance to a fellow lawyer." *Spreitzer*, 123 Ill. 2d at 21.

¶ 38    As discussed, with regard to the public defender's office, this court has declined to adopt a *per se* rule finding a conflict of interest where different assistant public defenders represent codefendants in a case. Consequently, with regard to the public defender's office, a case-by-case inquiry "is contemplated whereby it is determined whether any facts peculiar to the case preclude the representation of competing interests by separate members of the public

defender's office." *Miller*, 79 Ill. 2d at 462. The mere fact that codefendants in a case are represented by separate members of the public defender's office does not violate Rule 1.7.

¶ 39    Campanelli then argues that appointing the office of the public defender to represent codefendants always presents a conflict of interest under Rule 1.7 because Campanelli, as the Cook County public defender, is counsel to all the defendants her office represents. Campanelli cites the Counties Code, as well as *Burnette v. Terrell*, 232 Ill. 2d 522 (2009), in support of her argument.

¶ 40    Campanelli points out that the Counties Code provides:

> "The Public Defender, as directed by the court, shall act as attorney, without fee *** for all persons who are held in custody or who are charged with the commission of any criminal offense ***." 55 ILCS 5/3-4006 (West 2016).

In addition, *Burnette* held that the circuit court under the Counties Code "appoints the office of the public defender to act as the attorney for an indigent defendant" and "does not appoint an individual assistant public defender." *Burnette*, 232 Ill. 2d at 538. Campanelli seizes upon the preceding language from *Burnette* to support her claim that she is the attorney for all defendants represented by her office.

¶ 41    We find Campanelli's reliance on *Burnette* to be misplaced. At issue in *Burnette* was whether a circuit court judge had the authority to refuse to allow an assistant public defender to represent clients in his courtroom, to remove an assistant public defender from representation of a defendant, or to assign a specific assistant public defender to represent a defendant in an individual case. The court held that the public defender has the sole authority to make work assignments for the assistant public defenders. *Id.* at 538-39. In so holding, the court noted that, under the Counties Code, the circuit court has the authority to direct the public defender to represent an indigent defendant but the circuit court does not appoint the individual assistant public defender. *Id.* at 538.

¶ 42    The fact that the trial court appoints the office of public defender to represent an indigent defendant, rather than appointing specific assistant public defenders, does not thereby transform the office of the public defender into a single entity for purposes of conflict of interest analysis. Similarly, the fact that the appointed public defender has supervisory authority over his or her assistant public defenders does not override an assistant public defender's undivided loyalty to his client.

¶ 43    In *Banks*, the court declined to find a *per se* conflict of interest where one assistant public defender argued the ineffective assistance of another assistant public defender. *Banks*, 121 Ill. 2d 36. *Banks* held that it would be erroneous to assume that public defenders have such an allegiance to their office that they would be unable to subordinate that allegiance to the interests of their clients. *Id.* at 43. Pursuant to Campanelli's argument, an assistant public defender would never be able to argue the ineffective assistance of another assistant public defender where they were both were under the supervision of the public defender, as the public defender then would be arguing her own ineffectiveness. *Banks* implicitly rejected such an analysis in finding that an assistant public defender's loyalty to his client supersedes his allegiance to the office of the public defender.

¶ 44    The same analysis applies when different assistant public defenders are appointed to represent codefendants in a case. While Campanelli has oversight of the approximately 518 assistant public defenders in her office, it is the assistant public defender appointed to represent

a defendant who provides the legal services to that defendant. The assistant public defender's loyalty to his office has not been deemed great enough to impute to him the conflicts of other assistant public defenders. *Id.* at 42. As in *Banks*, the fact that Campanelli has supervisory authority over all the assistant public defenders in the office of the Cook County public defender is not sufficient grounds, in and of itself, to disqualify the entire office from representing codefendants.

¶ 45 Campanelli next argues that, in any event, the trial court abused its discretion in appointing her to represent Cole because she twice informed the court that a direct conflict of interest prevented her from zealously representing Cole. Campanelli points to her written submission to the court stating that there was a conflict in representing Cole with respect to her codefendants but that "more detail cannot be given without violating the attorney-client privilege, which is the very thing the Public Defender is seeking to avoid via the appointment of counsel." When she appeared in court on the issue, Campanelli again told the court she was in conflict and could not "divulge attorney-client privilege information that I have learned about the other five codefendants in this case in order to tell you what the conflicts in this case are." Citing *Holloway*, Campanelli contends that it was enough to prove a conflict when she, as an officer of the court, represented that Cole would be prejudiced by her appointment.

¶ 46 *Holloway* held that if a potential conflict is brought to the attention of the trial court by counsel at an early stage, a duty devolves upon the trial court to either appoint separate counsel or take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel. *Holloway*, 435 U.S. at 484; accord *Spreitzer*, 123 Ill. 2d at 18. *Holloway* found persuasive decisions holding that an attorney's request for the appointment of separate counsel, based upon his representations as an officer of the court regarding a conflict of interest, generally should be granted. *Holloway*, 435 U.S. at 485. *Holloway* observed that those courts had considered that an attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will develop during the course of a trial, that defense attorneys have an obligation upon discovering a conflict of interest to advise the court of the problem, and that attorneys, as officers of the court, address the judge virtually under oath in making their declarations. *Id.* at 485-86.

¶ 47 Campanelli argues that the trial court abused its discretion in ordering her to represent Cole in light of Campanelli's assertion that a conflict of interest prevented her from doing so. Campanelli contends that she cannot be ordered to divulge attorney-client privileged information in order to establish a conflict.

¶ 48 Campanelli is correct that counsel cannot be ordered to divulge attorney-client privileged information. However, *Holloway* explained that its holding did not preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interest without improperly requiring disclosure of the confidential communications of the client. *Id.* at 487. The trial court in this case never ordered Campanelli to divulge confidential communications in attempting to ascertain the basis for Campanelli's refusal to accept the appointment to represent Cole.

¶ 49 Campanelli then argues that the trial court erred in asking her to explain the direct conflict regarding the representation of Cole to the court. At oral argument, counsel for Campanelli argued that Campanelli need only allege a conflict of interest, without more, in order to withdraw from representation. Campanelli cites *People v. Jones*, 121 Ill. 2d 21, 28 (1988), in

arguing she need only allege a potential or possible conflict in order to withdraw from representation.

¶ 50    Although *Jones* referenced a potential or possible conflict that might deprive a defendant of the effective assistance of counsel, *Jones* discussed a potential or possible conflict in the context of the proper procedure when a conflict is brought to the attention of the trial court. *Jones* noted that in *Holloway*, when a potential conflict is brought to the attention of the trial court by counsel before trial or at an early stage of trial, the trial court must take "adequate steps" to deal with it. *Id. Jones* then stated that if "adequate steps" are not taken, the fact of a potential or possible conflict might deprive the defendant of the guaranteed assistance of counsel. *Id. Spreitzer* explained that adequate steps require a court to "ascertain whether the risk of conflict was too remote to warrant separate counsel." *Spreitzer*, 123 Ill. 2d at 18. The question in this case, then, is whether the trial court properly found that the risk of conflict in the representation of Cole was too remote to warrant separate counsel.

¶ 51    A defendant raising a potential conflict between two public defenders need only present the gist of such a conflict. *People v. Hardin*, 217 Ill. 2d 289, 303 (2005). "The defendant must sketch, in limited detail, a picture of how the working relationship between the public defenders created an appearance of impropriety." *Id.* However, bare allegations of a conflict are not enough, and in the absence of an evidentiary record of conflict, a conflict should not be created based on mere speculation. *Id.* at 302. Relevant factors to consider include whether the two public defenders were trial partners in the defendant's case; whether the public defenders where in hierarchical positions where one supervised or was supervised by the other; or whether the size, structure, and organization of the office in which they worked affected the closeness of any supervision. *Id.* at 303.

¶ 52    Here, the trial court found that Campanelli failed to provide any substantive basis that a conflict of interest prohibited her from providing legal representation to Cole. Upon review, we find no abuse of discretion in the trial court's finding. None of the factors deemed relevant in *Hardin* are set forth in the record in this case with regard to the representation of Cole. Campanelli conceded that Cole's codefendants were represented by attorneys from the public defender's multiple defendant division. The office of the Cook County public defender describes the multiple defendant division as follows:

> "Attorneys assigned to the Multiple Defendant Division (MDD) of the Law Office of the Cook County Public Defender represent clients in felony and first degree murder cases where more than one person is accused. These attorneys are very experienced and represent indigent accused throughout the county. They act independently of other divisions in the office to prevent any effects from a conflict between Public Defender clients." *Divisions of the Public Defender's Office*, Cook County Gov't, http://cookcountyil.gov/service/ divisions-public-defenders-office (last visited Nov. 8, 2017).

Although Campanelli contends that the multiple defendant division itself is always in conflict, that assertion is based upon her argument that the office of the Cook County public defender is a law firm, as well as her argument that she is the appointed counsel to all the defendants her office represents. As discussed *supra*, we have rejected these arguments.

¶ 53    Campanelli also acknowledged that there were approximately 518 attorneys employed by the office of the Cook County public defender and those 518 attorneys did not all share the

same supervisors. Further, the attorneys assigned to represent Cole's codefendants were from different divisions of the public defender's office, and each had a different supervisor. These facts mitigate against a finding of conflict of interest in Campanelli's representation of Cole.

¶ 54 Although a defendant need only present the gist of a conflict, we find that Campanelli proffered only the bare allegations of a conflict, based on mere speculation. In the court hearing on May 10, 2016, when asked to explain the direct conflict to the court, Campanelli clarified that there was a potential for conflict and asserted that she did not have to wait until a conflict developed. In her written submission to the court, Campanelli claimed that there was a conflict of interest whenever she was appointed to represent multiple defendants. Again, at the May 19, 2016, hearing, Campanelli stated that she could not represent more than one defendant because of the potential conflict, although she acknowledged that each codefendant was represented by separate attorneys from different divisions of her office, with different supervisors. At the June 15, 2016, hearing, Campanelli repeated that she was in conflict representing Cole because she already represented five other defendants.

¶ 55 Despite Campanelli's attempt to assert a conflict in the public defender's representation of Cole, it is clear that basis for Campanelli's conflict or potential conflict in representing of Cole arises solely from the fact that the office of public defender was appointed to represent more than one defendant in this multiple defendant case. *Robinson* and its progeny have consistently rejected that claim.

¶ 56 We note that even in her brief on appeal, Campanelli's argument concerning her conflict centers on a remote potential for conflict. She argues that it is all but inevitable in a joint representation that a conflict of interest will arise and that conflicts are difficult to discern at the outset of criminal litigation. Campanelli also argues that waiting to appoint conflict-free counsel until a conflict reveals itself is wasteful and often prejudicial. In addition, Campanelli asserts that conflicts that do not exist at the outset of a representation may arise later in the case.

¶ 57 These "potential conflicts," however, are the type that may exist in every case involving multiple representation of codefendants. *Cuyler* recognized that "a possible conflict inheres in almost every instance of multiple representation." *Cuyler*, 446 U.S. at 348. Nonetheless, the United States Supreme Court and this court have declined to find a *per se* conflict of interest simply because multiple representation may involve a conflict of interest.

¶ 58 At best, Campanelli's claims of conflict are based upon mere speculation that joint representation of codefendants by assistant public defenders will, at some point, result in conflict. These claims fail to provide an evidentiary record of conflict, and a conflict cannot be created on mere speculation.

¶ 59 As noted, under *Holloway* and *Spreitzer*, when a potential conflict is brought to the attention of the trial court at an early stage, a duty devolves upon the trial court to either appoint separate counsel or to take adequate steps to ascertain whether the risk of conflict was too remote to warrant separate counsel. Here, the trial court took adequate steps to ascertain that the risk of conflict was too remote to warrant separate counsel. Under the circumstances, then, the trial court did not abuse its discretion in finding that there would be no prejudice to Cole in appointing the office of the Cook County public defender to represent her.

¶ 60 Having found that the trial court did not abuse its discretion in ordering Campanelli to represent Cole, it follows that the trial court did not err in adjudicating Campanelli to be in

direct civil contempt of court. Section 3-4006 of the Counties Code provides that "[t]he Public Defender, as directed by the court, *shall act* as attorney, without fee, before any court within any county for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel." (Emphasis added.) 55 ILCS 5/3-4006 (West 2016). Here, the trial court directed Campanelli, the public defender, to act as attorney for Cole. Campanelli refused the trial court's direction. The trial court therefore properly invoked its inherent power to enforce its order and preserve the dignity of the court by use of contempt proceedings.

¶ 61    Accordingly, we affirm the trial court's judgment finding Campanelli to be in direct civil contempt and imposing sanctions for that contempt. We note, however, that the record is clear that the trial court understood Campanelli's contempt was purely a formal one and that the motivation for the contempt was solely to permit an appeal of the issue of multiple representation of defendants in light of the 2010 revisions to the Illinois Rules of Professional Conduct. Given these circumstances, we vacate the order of the trial court holding Campanelli in contempt and vacate the award of sanctions, despite our finding that the contempt order and award of sanctions were valid. See *Shukovsky*, 128 Ill. 2d at 231 (vacating contempt order where contempt was purely formal and motivation was to permit examination of a question through appeal); *Jiotis v. Burr Ridge Park District*, 2014 IL App (2d) 121293, ¶ 57 (where contemnor refuses to comply with court order in good-faith effort to secure an interpretation of an issue without direct precedent, it is appropriate to vacate the contempt on appeal).

¶ 62    Moreover, because the underlying case against Cole has continued to proceed with appointed counsel since May 19, 2016, we find, for purposes of judicial economy, that appointed counsel shall continue to represent Cole in the underlying case. We decline to order Campanelli to now accept representation of Cole.

¶ 63    For all the preceding reasons, we affirm the judgment of the circuit court of Cook County finding contemnor Amy Campanelli to be in direct civil contempt and imposing sanctions for that contempt. Nonetheless, we vacate the trial court's order adjudicating Campanelli in contempt and imposing sanctions.

¶ 64    Circuit court judgment affirmed.

¶ 65    Adjudication of direct civil contempt vacated.