2024 IL App (1st) 232052

Nos. 1-23-2052, 1-24-0085

Order filed August 28, 2024

THIRD DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

|  |  |  |
|---|---|---|
| *In re* PARENTAGE OF A.C., I.C., J.C., L.C., and O.C.: | ) ) ) | Appeal from the Circuit Court of Cook County. |
| (Anthony C., | ) ) | No. 2021 D 079209 |
| Petitioner-Appellant, | ) ) | Honorable Doretha Renee Jackson |
| V. | ) | Judge, Presiding |
| Crystal M. | ) ) | |
| Respondent-Appellee.) | ) | |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Justices Lampkin and Van Tine concurred in the judgment and opinion.

**OPINION**

¶ 1    Petitioner Anthony C. appeals the October 6, 2023 order finding him to be in contempt of court and ordering indefinite confinement in the custody of the Cook County Sheriff's Department until a purge payment of $2500 was made. In another appeal that has been consolidated with this appeal, Anthony also appeals a subsequent order dictating that the $2500 purge payment be paid to respondent Crystal M. and child representative Paul Garcia (Garcia), with $1250 to be disbursed to each.

¶ 2                                    I. BACKGROUND

¶ 3        This appeal is under review on appellant's brief only, and the factual account contained in petitioner's brief is less than exhaustive. Accordingly, the general background facts of this case are drawn from an April 14, 2022 order entered in the circuit court that detailed the background of the case leading up to that point.

¶ 4        Anthony and Crystal were never married but cohabited in a common-law relationship and had five children together. Around November 1, 2020, their relationship ended, and the two ceased living together. Within the following week, Anthony's eldest daughter committed suicide. Following the funeral for Anthony's daughter, Anthony and Crystal were together in a motel room. Anthony accused Crystal of being responsible for his daughter's suicide and "physically assaulted and battered" Crystal. When police came to apprehend Anthony, he "had a mental breakdown and had to be hospitalized." Crystal subsequently filed a petition for an emergency order of protection, and said order was issued January 15, 2021.

¶ 5        After the parties failed to arrive at a mutually satisfactory parenting arrangement, Anthony filed a petition to establish parentage and for allocation of parental responsibilities on February 23, 2021. This cause has been pending in the circuit court ever since, with numerous motions, hearings, and orders in the interim period before several different judges. The only hearing relevant to this appeal is the one held on October 6, 2023 before Judge Doretha Renee Jackson. The record contains no certified report of proceedings for the October 6, 2023 hearing. However, four separate orders were entered on the same day that refer to Anthony's contempt charges.

¶ 6       The first October 6, 2023 order entered was handwritten in full (first order),[1] and read:

> "This matter coming before the Court, in person, both parties present as well as the Attorney Paul Garcia, Esq as child representative; and Mr. [Anthony] refusing to shut down his electronic device (Ipad type device); the Court having retrieved the device and Mr. [Anthony] refusing to advise the Court as to how to shut down the device, and Mr. [Anthony] showing incivility and disrespect to the court and as a result the court ordered 10 contempts.
>
> It is hereby ordered:
>
>   (1) Anthony [C.]'s IPAD is hereby confiscated and shall be held by the Sheriff's Department[.]
>
>   (2) Anthony [C.] continued to show incivility, including refusal to comply with the court's orders regarding other electronic devices he retrieved from his suit jacket or other personal belongings and indicated that he had the right to record the court sessions.
>
>   (3) Anthony [C.] is held in DIRECT CIVIL CONTEMPT.
>
>   (4) Anthony [C.] shall pay a $250.00 fine for each contempt of court.
>
>   (5) Anthony [C.] shall not release, publish or share in any way, any recordings he made in Court. Any such recordings must be presented to the Court for further rulings."

---

[1] As these orders were all entered on the same day, we have assigned them numbers based upon the order in which it seems that they were entered, based upon their content.

¶ 7    The second order entered was on a form template with the header "ORDER OF ADJUDICATION OF INDIRECT CIVIL CONTEMPT AND/OR ORDER OF COMMITMENT." (second order). That order, with filled-in portions presented in italics, read:

"This cause being heard this date pursuant to a rule to show cause directed to *Anthony* [*C.*] (hereinafter 'contemnor') to show cause, if any s/he has, why s/he should not be found in indirect civil contempt and sanctioned forthwith, for failure to comply with the Court's order entered on 10-06-23, directing contemnor to *turn off electronic devices [and] continually speaking* [*sic*] *over the court after multiple warnings.*

And the Petitioner/Respondent appearing: *in person*, and the contemnor likewise appearing *in person*.

And the Court, having heard the testimony of the parties and witnesses, together with all pleadings, exhibits, and arguments of counsel, and being fully advised in the premises, hereby finds that:

(1) The Court has jurisdiction of the parties and subject matter;

(2) On the 6th day of October, 2023 this Court entered an order directing the contemnor to shut off electronic devices [and] refusing [*sic*] to stop speaking over the court after multiple warnings [and] 10 ten [*sic*] contempt charges[.]

(3) As of the *6th* day of *October, 2023*, contemnor has failed to*: follow the orders of the court.*

(4) The contemnor has not given any legally sufficient reasons for failure to comply with said order, even though s/he had, and still has, the means to comply with said order, and that contemnor's failure to comply with said order is willful and contumacious;

4

(5) The conduct of the contemnor has defeated and impaired the rights and interests of the Petitioner/Respondent and has further impeded and obstructed the Court in its administration of justice; and

IT IS THEREFORE ORDERED AND ADJUDGED that the contemnor:

Is hereby found and declared to be in indirect civil contempt of Court for willful failure to obey the Court's order as herein stated;

Is ordered committed to the Cook County Jail, there to remain until s/he shall have purged him/herself of contempt by: *paying $2,500.00 ($250.00 for each occasion of contempt)*."

¶ 8    The third order was handwritten in full (third order) and read:

"This matter being before the court for the status of compliance with August 4, 2023 order requiring Mr. [Anthony] to get a mental health evaluation [and] for each party to pay $2,500 to child representative, Mr. [Anthony] having failed to comply [with the] court's orders to turn off his devices [and] to stop speaking over the court both parties present *pro se* [and] Mr. [Anthony] having been taken into custody for 10 contempts of court [and] his devices having been confiscated via separate order, Mr. [Anthony] having complied [with] initial cooperation [*sic*] [with] Chicago Institute [and] Mrs. [Crystal] having complied [with] payment order, Mr. Anthony having not complied,

It is hereby ordered:

(1) This matter is continued to 10-10-23 at 9:30 a.m. via Zoom for status on Mr. [Anthony's] purge."

¶ 9    The fourth order was similarly on a form template labeled "REMAND/COMMITMENT/RELEASE ORDER BY ORDER OF COURT" (fourth order) stating, in relevant parts, with handwritten portions presented in italics:

"THE COURT FINDS: *Mr.* [*Anthony*] *in contempt on 10 occasions in the courtroom. The contempt of court shall be charged at $250 per contempt.*

IT IS HEREBY ORDERED:

\*\*\*

This matter is hereby continued to *10-10-23* at *9:30 a.m.* in Calendar *43 via Zoom* for a hearing on *payment of purge ($2,500). Sheriff shall allow Anthony to appear via Zoom if he's still in custody.*

\*\*\*

Respondent is committed/remanded to the custody of the Sheriff of Cook County and shall not be released until cash bond is posted in the amount of *$2,500.00*.

\*\*\*

Respondent shall be allowed reasonable phone calls to obtain bond.

Note to Sheriff: Anthony [C.] may have recording device on his person or in his personal belongings including an 'ink pen' device which was in his suit jacket. Please detain these until further order of the court."

¶ 10    On December 18, 2023, the circuit court entered an order stating: "Mr. [Anthony] paid a $2,500 Bond to purge of his commitment entered on October 10, 2023. $1,250 of that Bond shall be paid to Crystal [M.] for past due child support. The other $1,250 shall be paid to Paul Garcia for his court ordered GAL fees."

¶ 11    Anthony timely appealed the above orders.

6

¶ 12                                    II. ANALYSIS

¶ 13        In this pair of appeals, Anthony enumerates 12 issues, though at times it is unclear what argument Anthony is making. As best we can understand, Anthony argues (1) that Judge Jackson lacked jurisdiction to enter orders in the underlying case because it had not been properly transferred from the previous judge, (2) that he was held in contempt for the use of technology in the courtroom when such behavior cannot properly be considered contemptuous, (3) that he was not afforded due process with regard to 10 counts of indirect civil contempt, (4) that the contempt orders lack sufficient specificity and fail to articulate necessary details, (5) that the court's limitation on his use of technology denied him equal protection of the law, (6) that he was denied due process of law when the court failed to provide him with a paper copy of an October 10, 2023 order setting a status hearing for December 18, 2023, (7) that the award of $1250 to Crystal was improper for numerous reasons, (8) that the award of $1250 to child representative Paul Garcia was improper for numerous reasons, (9) that the circuit court violated his rights under the fourth amendment and the Illinois Constitution by confiscating his property, (10) that the circuit court violated his right to substantive due process and his first amendment rights by preventing him from recording the proceedings, (11) that Illinois Supreme Court Rule 323 (eff. July 1, 2017) is unconstitutional because it infringes on his first amendment rights, and (12) that Illinois Supreme Court Rule 44 (eff. Dec. 16, 2020) is unconstitutional because it infringes on his first amendment rights.

                                      A. Jurisdiction

¶ 14        Before examining Anthony's arguments on their merits, we have an obligation to first consider our jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 106 (2008) (citing *R.W. Dunteman Co. v. C/G Enterprises, Inc.*, 181 Ill. 2d 153, 159 (1998)). Anthony did not address the matter

of jurisdiction in his brief and instead requested the opportunity to file a supplemental brief should the matter of jurisdiction be one of concern. This is not an opportunity this court generally affords to appellants, and *pro se* appellants are held to the same standards to which we would hold an attorney. *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 78.

¶ 15    Rule 304(a) allows for appeals from final judgments that resolve one, but fewer than all, of a party's claims, so long as the circuit court "has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Rule 304(b) allows for immediate interlocutory appeals of specific types of judgments without a special finding under Rule 304(a), including "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016).

¶ 16    Anthony received no Rule 304(a) language from the court in this case. The provision in Rule 304(b)(5) for immediate interlocutory appeals of "[a] custody or allocation of parental responsibilities judgment or modification of such judgment" (Ill. S. Ct. R. 304(b)(6) (eff. Mar. 8, 2016)) does not entail the appealability of every judgment in a case where parental responsibilities are at stake. Accordingly, we lack jurisdiction to review those issues numbered 5 or higher in the list recounted above. We will review only arguments 1-4, those which concern Anthony's contempt charges, as those are ripe for interlocutory appeal.

¶ 17                    B. Contempt Charges

¶ 18    The first thing we must ascertain when faced with an issue involving contempt charges is the nature of the contempt. "In order to determine whether a contempt finding is civil or criminal in nature, it is important to consider the purpose for which the contempt sanctions are imposed." (Internal quotation marks omitted.) *In re Marriage of O'Malley*, 2016 IL App (1st)

151118, ¶ 26. "There are four main types of contempt: direct civil contempt, direct criminal contempt, indirect civil contempt, and indirect criminal contempt." *Windy City Limousine Co. v. Milazzo*, 2018 IL App (1st) 162827, ¶ 36. "Properly identifying the type of contempt is critical because the procedures that must be followed depend on the type of contempt involved." *Id.* Civil contempt is "designed to compel future compliance with a court order" and can be avoided through compliance alone. (Internal quotation marks omitted.) *O'Malley*, 2016 IL App (1st) 151118, ¶ 26. "[T]he civil contemnor must hold[ ] in his own pocket the key to his jail cell, so that he may win his release at any time by complying with the order of the court." (Internal quotation marks omitted.) *Door Properties, LLC v. Nahlawi*, 2023 IL App (1st) 230012, ¶ 56. "Contempt based on past actions which cannot be undone means that the contemnor lacks the ability to purge the contempt [citation] because the purpose of civil contempt is to compel compliance with court orders, not to punish [citation]." *O'Malley*, 2016 IL App (1st) 151118, ¶ 26. "Therefore, whenever a court order cannot be complied with, there cannot be a finding of civil contempt." *Id.*

¶ 19        Criminal contempt is "instituted to punish, as opposed to coerce, *** for past contumacious conduct." (Internal quotation marks omitted.) *Id.* ¶ 27. Criminal contempt sanctions "punish a contemnor for past acts [that] he cannot now undo." (Internal quotation marks omitted.) *Id.* "In short, criminal contempt consists of punishing for doing what has been prohibited or not doing what has been ordered, while civil contempt is invoked to coerce what has been ordered [citation], and once the contemnor complies, no further civil sanctions are imposed [citation]." *Id.* "In sum, the attributes of civil contempt are that (1) the contemnor is able to perform the action demanded by the court and (2) no further civil sanctions are imposed if the contemnor complies." *Id.* "[T]his court is not bound by the trial court's designation, but, instead, we must

9

examine the nature of the sanctions imposed." *SKS & Associates, Inc. v. Dart*, 2012 IL App (1st) 103504, ¶ 14.

¶ 20     "Direct and indirect contempt are distinguished based upon *where* the contemptuous conduct occurred." (Emphasis in original.) *Windy City*, 2018 IL App (1st) 162827, ¶ 40. "A direct contempt charge is brought when the alleged contemptuous conduct occurs in the direct presence of a judge, whereas an indirect contempt charge is brought when the alleged contemptuous conduct occurs outside the direct presence of a judge." *Id.* "The crucial distinguishing factor between direct and indirect contempt is the proof necessary to establish the contempt charge." *Id.* "[W]here all the facts necessary to prove a contempt charge are known by the judge, direct contempt is the proper characterization." *Id.* "Properly identifying whether a contempt charge is direct or indirect is critical because a direct contempt charge may be resolved summarily without formal pleadings, notice, or a hearing, as the alleged conduct was witnessed firsthand by the judge." *Id.* ¶ 41. "Direct contempt, regardless of whether it is criminal or civil in nature, may generally be dealt with in a summary fashion—without the formality of pleadings, notice, or hearing—because the offending conduct was witnessed by the court itself." *In re Estate of Lee*, 2017 IL App (3d) 150651, ¶ 40. "On the other hand, a person charged with indirect criminal contempt is generally entitled to all of the constitutional protections and procedural rights afforded to other criminal defendants ***." *Id.*

¶ 21     The standard of review for matters of contempt is abuse of discretion. *O'Malley*, 2016 IL App (1st) 151118, ¶ 25. "A trial court abuses its discretion only when no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Id.*

¶ 22     We will address Anthony's arguments in the order he made them. First, Anthony argues that the case was not properly before Judge Jackson and therefore she lacked jurisdiction and

the contempt orders are void. Anthony asserts that "the record will reveal total absence of a self-recusal order from Judge Junnusch [*sic*] Judge [*sic*] and a reassignment for Judge Jackson to my case." However, Anthony provides no legal citation to support the implied assertion that such an order was necessary for Judge Jackson to possess jurisdiction over the case. As Anthony has failed to contend anything at all on this issue beyond the initial statement of the issue, we have no argument to consider, and this issue is forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***.").

¶ 23    Second, Anthony makes a somewhat unfocused argument regarding the correct identification of contemptuous behavior that we take to assert that his use of technology in the courtroom could not appropriately be the subject of a contempt order. However, the record contains no certified transcript of the hearing during which the court found Anthony in contempt. "It is the appellant's burden to provide a sufficiently complete record to support his or her claims." (Internal quotation marks omitted.) *Xcel Supply, LLC v. Horowitz*, 2018 IL App (1st) 162986, ¶ 52. In the absence of a complete record of the proceedings at trial to support an appellant's claim of error, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis," and "[a]ny doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Fouch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984). Anthony's filings contain what appears to be a self-prepared transcript, but the transcript is not certified by the court and therefore is not properly included in the record. Although Anthony does present argumentation on this issue, we are obligated to ignore its contents in favor of the properly certified common-law record and the certified record of proceedings. Accordingly, we presume that the events at the hearing gave the circuit court reason to hold Anthony in contempt with regard to his use of personal devices.

¶ 24    Although we are obligated to assume that the circuit court's decision on this matter was appropriate due to the lack of a proper record, the circumstances of the October 6, 2023 hearing in this case are a reminder of the importance of the proper application of Rule 44. Ill. S. Ct. R. 44 (eff. Dec. 16, 2020). The text of the rule clearly prohibits audio recording in the courtroom. However, in this digital age, many personal electronic devices serve a multitude of purposes. It is not uncommon for a modern attorney to exclusively utilize such a multipurpose device, like a laptop, tablet computer, or mobile phone, to access his or her notes, e-mails, calendar, and the documents relevant to the case, while advocating in the courtroom. This holds no less true for self-represented litigants, who might be wholly reliant on such a device to advocate for themselves. Where we deny access to such integral technology, we limit access to justice. As such, although we understand the potential frustration involved in the difficulty of policing Rule 44 compliance with such multipurpose devices, we advise caution in depriving litigants of such devices in the courtroom.

¶ 25    Third, we can readily dispense with Anthony's argument that he was not afforded the due process owed to the subject of a charge of indirect civil contempt. Anthony is correct that he received no such process of law, but the behavior in question took place in court and was not subject to subsequent purge by way of compliance; as such, the charges were charges of direct criminal contempt, regardless of the labels erroneously applied by the circuit court. Therefore, Anthony's due process claim fails.

¶ 26    Lastly and most importantly, Anthony argues that, even if the orders are viewed as direct civil contempt orders, they are deficient. Anthony's arguments are numerous and flawed, and the legal citations he offers in support of his arguments are scant, but the gist of an argument to which he alludes is correct. Although the record on appeal lacks a transcript of the events

that took place, it does contain a series of orders entered by the court on the day of the hearing that describe Anthony's contempt charges. The first order described actions, namely refusing to shut down his electronic device or advise the court on how to turn off the device, as well as "showing incivility and disrespect to the court," which would constitute direct criminal contempt. Nonetheless, the first order held Anthony in *direct civil* contempt and ordered him to pay a $250 fine for each of the 10 contempt charges, for a total of $2500. The second order entered on the same day described the same actions, called them *indirect civil* contempt, and ordered Anthony to be committed to the Cook County jail until such time as a $2500 purge was paid. This third order dictated confinement predicated on a potential purge within the power of the contemnor, as one would expect of an *indirect civil* contempt order, but it did so for acts that were clearly direct criminal contempt. The third order presented no new information on the events, aside from the fact that Anthony was taken into custody for the 10 previously ordered findings of contempt. The fourth order remanded him to the Cook County jail with instructions to allow him to attend the subsequent hearing virtually, at that time, if he still had not paid the so-called "purge" and was therefore still in custody. This again made clear that the period of confinement was not a set period of time but was instead dictated by Anthony's compliance or noncompliance. As aforementioned, we must assume that the factual basis for these contempt charges is sound, as we have no transcript of the hearing at which the events took place, but since we have the orders that resulted, we are able to review them for errors of law.

¶ 27    Although this series of orders has a number of flaws, the most central is that Anthony was committed to Cook County jail for an indefinite period for charges that constituted direct criminal contempt, not any form of civil contempt. "Although an indefinite prison term would

be appropriate for civil contempt where the contemnor holds the keys to his cell [citation], it is not appropriate as a punishment for criminal contempt." (Internal quotation marks omitted.) *In re Marriage of Gibbs*, 268 Ill. App. 3d 962, 972 (1994). Furthermore, Anthony was ordered to pay a $2500 fine in the first contempt order entered, but thereafter it was repeatedly referred to and treated as a purge rather than a fine. While a period of jail time and a fine are valid punishments for criminal contempt, it is unacceptable to have our courts ordering indefinite detention subject to the payment of a purge for criminal contempt. *Id.* ("[A] term of imprisonment imposed as a sanction for criminal contempt must be a definite term."), *O'Malley*, 2016 IL App (1st) 151118, ¶ 26 ("Contempt based on past actions which cannot be undone means the contemnor lacks the ability to purge the contempt ***."). It is imperative that so forceful a measure as a charge of contempt is handled with care. Here, the circuit court failed to take the necessary care to correctly identify the form of contempt appropriate to the actions that warranted the contempt and, therefore, failed to properly classify the funds assessed.

¶ 28      Once we have properly recharacterized the form of contempt as direct criminal contempt, the first contempt order is acceptable, as it levied 10 $250 *fines*, which we interpret to mean criminal fines, against Anthony and did not order confinement whatsoever. The second order, on the other hand, is unsalvageable: it characterized the contempt as indirect civil contempt and ordered Anthony confined indefinitely until a $2500 purge is paid. Accordingly, we reverse the second order in its entirety. The third order is acceptable. Though it incorrectly referred to the fine as a purge, it ordered nothing that relied upon the so-called purge. The fourth order, which remanded Anthony into custody is reversed to the extent that it ordered Anthony incarcerated until such time as a cash bond was posted and to the extent that it referred

to the cash payment as a purge. Anthony was not sentenced to a valid term of incarceration, so his sentence of incarceration is reversed and, to the degree the circuit court ordered a purge, those portions of the October 6, 2023 orders are reversed as well. We leave intact and affirm the sentence of 10 $250 criminal fines, as that punishment was appropriate for a finding of direct criminal contempt.

¶ 29                                III. CONCLUSION

¶ 30        For the foregoing reasons, those issues over which we have no jurisdiction are dismissed, and Anthony's sentences of incarceration and a monetary purge, as dictated in the October 6, 2023 orders, are reversed. The circuit court's order requiring Anthony to pay 10 $250 criminal fines is affirmed.

¶ 31        Affirmed in part, reversed in part, and dismissed in part.

*In re Parentage of A.C.*, 2024 IL App (1st) 232052

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2021-D-079209; the Hon. Doretha Renee Jackson, Judge, presiding. |
| **Attorneys for Appellant:** | Anthony Anthony, of Chicago, appellant *pro se*. |
| **Attorneys for Appellee:** | No brief filed for appellee. |